RESEARCH & TRADING CORPORA-
TION, a Delaware corporation,
Plaintiff,

v.

Mike POWELL and Rose Manufacturing
Company, a Colorado corporation,
Defendants.

Court of Chancery of Delaware,
New Castle County.

Submitted: Aug. 25, 1983.

Decided: Oct. 12, 1983.

Francis J. Murphy of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiff.

Robert D. Graham (argued) and Benjamin C. Wetzel, III, of Bayard, Brill & Handelman, Wilmington, for defendant Powell.

William E. Wiggin of Richards, Layton & Finger, Wilmington, for defendant Rose Mfg. Co.

LONGOBARDI, Vice Chancellor.

The Defendant Michael Powell ("Powell") was employed by the Plaintiff Research & Trading Corporation ("RTC") from July 27, 1976, until he resigned on April 2, 1982. The very next day, he commenced working with Rose Manufacturing Company ("Rose"), a competitor of RTC. The complaint alleges that Powell has been contacting RTC's customers and suppliers since his employment with Rose, all which it contends is in violation of a restrictive covenant signed by Powell while he was a RTC employee.

Both parties have moved for summary judgment on the validity of the restrictive covenant. Powell contends the restrictive covenant is void because it was not supported by any consideration. RTC contends that Powell, whose employment was terminable at will, was in effect given his job in return for executing the restrictive covenant. The narrow issue to be resolved is whether "continued" employment is sufficient consideration to support a restrictive covenant against competition.

While Powell worked for RTC, he held various sales positions. During the latter part of 1980, Powell's title was "Sales Manager—Industrial Distribution." In January or February, 1981, the date being uncertain

because of Powell's conflicting statements,[1] he accepted the position titled "National Accounts Manager." The job was a new one created as a result of RTC's reorganization efforts which included a greater investment by the company in its sales force in order to boost sales. RTC contends that the new job was designed to provide Powell, a "key salesman", with more time to develop a larger nationally based clientele. If it happened, Powell would benefit from increased commissions and RTC would gain larger profits. In furtherance of the new job, RTC gave Powell an expanded expense account. Powell, on the other hand, argues that the job was just a change in title not a promotion and, if there were increased commissions, they were the results of his sales efforts.

RTC alleges that its president determined in January, 1981, during the reorganization period, that his company would seek employment agreements containing restrictive covenants with all salespersons. Powell argues that the covenant idea was not entertained by RTC until February, 1981. It is clear, though, that at the time of his acceptance of the new position, Powell was not told that he would have to sign a restrictive covenant in exchange for RTC's offer.

On March 3, 1981, Powell was approached by Jeffrey M. Petrizzi, RTC's Assistant to the President and General Manager, and asked to sign an employment agreement with a restrictive covenant. RTC contends that the primary motivation in obtaining the agreement was to keep confidential the proprietary information that Powell would obtain as National Accounts Manager. Defendant counters that this could not be RTC's purpose because he was neither offered nor given access to any additional proprietary information in exchange for signing the restrictive covenant. Both sides agree that when Powell asked what would happen if he refused to sign the restrictive covenant, he was told that (1) he might lose

his position with RTC and (2) he would be transferred to another position if one were available. Powell admits that because he feared losing his job, he signed the employment agreement containing the restrictive covenant. He did not receive any promotion, job reclassification, additional compensation or benefits in exchange for his signature on the covenant. Relevant parts of the agreement are as follows:

Whereas, the parties [RTC and Powell] acknowledge that possession and use of certain proprietary or trade secret information is involved in the business of the Corporation [RTC]; and

Whereas, the parties are desirous of protecting and preserving all such proprietary information and trade secrets.

Now, Therefore, Witnesseth that for and in consideration of future wages, salaries and employment benefits, payment of which for an indefinite period is a condition of this Agreement, and in consideration of the promises and covenants contained herein and other good and valuable consideration the parties hereby agree as follows:

\*　\*　\*　\*　\*　\*

2. Employee will not disclose any information or trade secrets obtained or acquired by Employee through the relationship with RTC nor shall Employee use such information in connection with employment or services provided to any other person or business entity which may now or in the future be in competition with RTC.

3. Employee covenants that Employee will not seek nor accept employment by any business entity which is directly or indirectly in competition with RTC in the sale of any products or product lines in the Continental United States for a period of two (2) years after the termination,

1. The exact date is clouded further by the fact that the job description for that position and the list of RTC customers that were considered "national accounts" were not completed until February 20, 1981. Also, on February 2, 1981, Powell signed correspondence as Sales Manager—Industrial Distribution.

for whatever reason, of Employee's employment with RTC.

Powell remained National Accounts Manager until January, 1982. At that time, he was transferred to another position, Manager of Region IV. As mentioned previously, he resigned on April 2, 1982, and started working for Defendant Rose on April 3, 1982.

■ The elements necessary to constitute a valid restrictive covenant are the same as those required for a contract in general, namely, a mutual assent to the terms of the agreement by all parties and the existence of consideration. *Faw, Casson & Co. v. Cranston,* Del.Ch., 375 A.2d 463 (1977); *Hammermill Paper Co. v. Palese,* Del.Ch., C.A. No. 7128, Longobardi, V.C. (June 14, 1983); [2] *Restatement (Second) of Law of Contracts* § 17 (1979).

Plaintiff contends that the change in job title was sufficient consideration to support the restrictive covenant. RTC cites *Faw, Casson & Co.* as controlling. In that case, an employee received a promotion and salary increase on December 1, 1975, but did not sign a restrictive covenant until January, 1976. The employee argued that the restrictive covenant was unenforceable for lack of consideration but this court held otherwise. The facts of *Faw, Casson & Co.,* though, are distinguishable from the present case. The court found consideration in that case because the promotion and restrictive covenant were part of the same agreement: "Thus, it is clear that all of the terms of defendant's promotion were set forth fully at the time it was offered to him and the need for an agreement not to compete was not an afterthought sought to be imposed after the original proposal." 375 A.2d at 467.

■ Although there is a dispute as to when Powell actually assumed his position as National Accounts Manager, it is uncontested that he already had been "promoted" when he signed the covenant. Furthermore, and most importantly, Powell was not told that he would have to sign until well after he had assumed his duties as National Accounts Manager. Thus, the change and the covenant were not part of the same scheme. Based on the reasoning of *Faw, Casson & Co.,* it is clear that Powell's promotion (or demotion as Defendant alleges) was not a valid consideration for his acceptance of the covenant not to compete. In essence, the agreement suffered from a lack of contemporaneity.

Powell agrees that he continued working as National Accounts Manager for approximately ten months after signing the covenant. He also admits that he was told he would lose his position as National Accounts Manager if he failed to sign the covenant. He contends, however, that these facts do not satisfy the requirement for separate consideration to support the covenant. Although this is a novel issue in Delaware, a substantial number of jurisdictions have faced the issue of whether an employee's continued employment constitutes consideration to support a restrictive covenant. See Annot., 51 A.L.R. 3rd 825, 833 (1973).[3]

RTC submits that the reasoning of the cases supporting its position is more persuasive. See, *e.g., Farm Bureau Service Co. of Maynard v. Kohls,* Iowa Supr., 203 N.W.2d 209 (1972) (continuing employment for indefinite period is sufficient consideration to support covenant not to compete executed after commencement of employment); *Matlock v. Data Processing Secur., Inc.,* Tex.Civ.App., 607 S.W.2d 946 (1980) (sufficient consideration found to support non-competition agreements signed by em-

**2.** In *Hammermill Paper Co. v. Palese,* C.A. No. 7128, an employee of an acquired company was asked by the purchasing company to sign a non-competition agreement. At the time the employee signed the agreement, he was given an increase in salary. He also knew that his acceptance of the agreement was a precondition of his raise. The Court found sufficient consideration in the increased salary to support the agreement.

**3.** At the present time, although the cases fall on both sides, there are at least three times as many jurisdictions which find this type of consideration sufficient.

ployees even though they had already entered service of employer where employees were required to execute agreements if they desired to continue their employment).

Powell, on the other hand, refers this Court to the authorities collected at 51 A.L. R.3rd 825 (1973) which hold that an employee's continued employment alone is not sufficient consideration to support a restrictive covenant. See, *e.g.*, *George W. Kistler, Inc. v. O'Brien*, Pa.Supr., 464 Pa. 475, 347 A.2d 311 (1975) (continuation of employment did not constitute sufficient consideration despite the fact that the employment relationship was terminable at will of either party).

In *McCombs v. McClelland*, Ore.Supr., 223 Or. 475, 354 P.2d 311 (1960), an early case from the Supreme Court of Oregon, it was decided that continued employment was not sufficient consideration to support the restrictive covenant. After a lengthy discussion of cases in an earlier annotation, the court noted the difference between its case and the line of cases which found consideration in continued employment: "A careful examination of these cases reveals either statements in the subsequent contract or outside of it, indicating in the main an agreement for continued employment or the circumstances were such as to indicate that the *employee would have lost his job had he not executed the agreement.*" (Emphasis added.) *Id.* 354 P.2d at 315. A substantial majority of the other cases which support Defendant's argument are also factually similar to *McCombs*. See *Morgan Lumber Sales Company v. Toth*, Ohio Com.Pl., 41 Ohio Misc. 17, 321 N.E.2d 907 (1974) (defendant was *requested* and did sign a restrictive covenant); *George W. Kistler, Inc. v. O'Brien, supra*, (employee was handed various forms to sign, among them a restrictive covenant); *Pemco Corp. v. Rose*, W.Va.Supr., 257 S.E.2d 885 (1979), applying Virginia law (employee signed after being asked to do so by an employee of the corporation). In this case, it is clear Powell was required to sign. If he had not signed, he would have been transferred. In

contrast, the employees in the above cases simply signed the covenant without the threat of losing their jobs if they did not sign.

Powell contends that *Faw, Casson & Co. v. Cranston, supra*, follows the Pennsylvania line of decisions characterized by the *Kistler* case. This court in *Faw, Casson & Co. v. Cranston, supra*, held that the restrictive covenant in issue was enforceable because consideration was present in the form of a promotion. Then Chancellor Marvel based his decision on the principle that "a beneficial change in an employee's status may constitute sufficient consideration to support a restrictive covenant agreed to after the initial taking of employment." *Faw, Casson & Co. v. Cranston*, 375 A.2d at 467. Contrary to Powell's assertion, *Faw, Casson & Co.* did not hold that continued employment is insufficient consideration. The court did not address that issue because there was an undisputed beneficial change in employment status.

A recent unreported decision, *Hammermill Paper Co. v. Palese*,[4] *supra*, may be indicative of the trend of Delaware law in this area. *Hammermill* also involved an alleged breach of a non-competition agreement. The employee claimed that the agreement was unsupported by adequate consideration because he had already been working for the company for an extended period. This Court held, as it did in *Faw, Casson & Co. v. Cranston, supra*, that a beneficial change (a raise in salary) was in itself sufficient consideration to support the agreement. In further discussion, this Court also found it relevant that the employer in Hammermill was not bound to retain the employee: "The likelihood of discharge of which Palese was aware, should be sufficient consideration since the decision that Palese's employment depended on the execution of the covenant was not made 'post-employment' but was actually a condition of employment." *Hammermill v. Palese*, C.A. No. 7128 at 6.

4. See footnote 2, page 4 for factual background on this unreported decision.

■ Similarly, RTC was not bound to retain Powell in its employ or to retain him as National Accounts Manager. There was no written contract and his employment was terminable at will by either party. In fact, Powell was told that he would have to sign or lose his position. Thus, Powell was given the option of signing the covenant and remaining as National Accounts Manager (practically, a "condition of employment" for that position) or transferring to another position if one were available. To this Court, there is no legally significant difference between the carrot, "sign it and you will be promoted", *Faw, Casson & Co. v. Cranston*, 375 A.2d 463, and the stick, "don't sign it and you will be demoted", as in this case. In either case, the employee gains something. In the one case, he gets a promotion and, in the other, a job.

This decision is not a departure from the basic principles of contract law already established in this State. In the context of stock option agreements, our courts have held that continued employment of an employee whose position is terminable at will constitutes sufficient consideration to support an enforceable contract. *Kerbs v. California Eastern Airways,* Del.Supr., 90 A.2d 652 (1952), *reargument denied,* Del.Supr., 91 A.2d 62 (1952); *Haney v. Laub,* Del.Super., 312 A.2d 330 (1973).

Finally, Powell argues that RTC's conduct in 1982 was such that it should be estopped from seeking enforcement of the covenant. He contends that RTC forced Powell to sign the covenant and systematically stripped him of his sales territory and reduced his ability to earn commissions. The facts indicate, however, that Powell was not "forced" into signing the agreement. He was given the option of signing or transferring to another position if one were available. In any event, Delaware case law is clear that these types of agreements may be required by an employer as a valid condition of employment. *Hammermill Paper Co. v. Palese, supra; Faw, Casson & Co. v. Cranston, supra.*

The Court finds there was sufficient consideration at the time of the signing of the covenant to support an enforceable restrictive covenant. Although Powell now alleges that the job was not as beneficial as he thought it would be, that type of argument will not defeat the validity of the covenant. Powell was told he would lose the position if he did not sign. It is inconsequential that the new position did not subsequently fulfill his expectations.

Both parties have moved for summary judgment. A motion for summary judgment can only be granted if there is "no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Chancery Court Rule 56(c). In determining whether there are disputed factual issues, this Court must consider the record in general and the factual inferences arising thereto in the light most favorable to the non-moving party. *Judah v. Delaware Trust Co.,* Del.Supr., 378 A.2d 624, 632 (1977); *Tanzer v. International General Indus., Inc.,* Del.Ch., 402 A.2d 382, 385 (1979).

In light of the uncontested factual basis framing the legal issue involved, the Court finds that the restrictive covenant is valid and enforceable as a matter of law. RTC's motion for summary judgment is granted. Defendants' motion for summary judgment is denied.

IT IS SO ORDERED.