**Richard C. POLLARD, Appellant,**

v.

**AUTOTOTE, LTD.**

No. 87–1691.

United States Court of Appeals, Third Circuit.

Argued April 14, 1988.

Decided July 18, 1988.

Frank W. Daly (argued), Auritt and Daly, Media, Pa., for appellant.

Barbara MacDonald (argued), Morris, James, Hitchens & Williams, Wilmington, Del., for appellee.

Before HUTCHINSON, SCIRICA and ROSENN, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Circuit Judge.

The issue in this appeal is whether a forfeiture provision in a deferred compensation management incentive plan is enforceable under Delaware law.

## I

The facts developed thus far are undisputed. Appellant Richard C. Pollard worked for Autotote, Ltd. and its corporate predecessor for approximately sixteen years. Autotote designs, installs and maintains parimutuel betting machines at racetracks and other betting arenas. Pollard's last position with Autotote was general manager of field operations for the United States, Canada and Mexico. His primary responsibilities involved overseeing operations, trouble-shooting and maintenance of parimutuel betting machines. He earned approximately $55,000.00 annually.

In 1971, Autotote's predecessor adopted a "Management Incentive Compensation Plan" for selected key executives. The plan authorized an Executive Committee to select employees to receive incentive benefits. The employee would receive one-half the benefits in cash in the year after they were earned. The other one-half would be deferred compensation carried on the employer's books and payable on retirement, death, disability or termination of employment in accordance with the terms set out in the plan. *See* J.A. at 59 (1971 plan, §§ 1.1–1.2). Section 5 of the plan provided that

> [i]n the event that an employee terminates his employment, there shall be distributed to him his vested interest ... in the amount of his deferred compensation on or after the twelfth month following the termination of his employment .... Key executives who disclose company information or secrets, or who directly or indirectly accept employment with a competitor within twelve months from the date of their termination, shall also lose all vested rights.

J.A. at 63 (§ 5.1(c)).

The plan was revised in 1977. Section 6.5 of the revised plan provided for forfeiture of deferred compensation in certain circumstances:

> [i]n the event that a Participating Executive voluntarily terminates his employ-

ment or is discharged other than for the reasons listed in Article 6.4 above [excessive drug or liquor use; conviction of certain crimes and commission of others; dishonesty, gross negligence or incompetence], he shall be paid his vested interest in the amount of his deferred compensation on or after the end of the twelfth month following such termination, provided however that should such executive disclose company information or secrets, or directly or indirectly accept employment as an employee or consultant or advisor or in any similar capacity with a competitor of the Participating Corporations within twelve months of such termination, he shall lose all of his vested interest in the deferred compensation and the same shall be forfeited.

J.A. at 24.

Pollard participated in the plan from 1975 through 1979, and was awarded total management incentive compensation of $104,223.00. He received one-half that amount, and one-half was deferred pursuant to the terms of the plans.[1]

On August 2, 1985, Autote eliminated Pollard's position as General Manager, Field Operations, and terminated his employment. On September 24, 1985, Pollard accepted employment with United Tote, Inc., which also supplies parimutuel betting machinery and apparatus. Pollard's position with United Tote is Customer Service Director for the eastern region, with a salary of $40,000.00 per year.

On August 6, 1986, Pollard asked Autotote to pay him the $52,111.50 that Autotote had been carrying on its books as deferred compensation. Autotote denied his request and notified Pollard that pursuant to section 6.5 of the 1977 plan, he forfeited his rights to deferred compensation when he accepted employment with United Tote, a competitor. *See* J.A. at 39.

## II

Pollard sought declaratory relief in district court, asking the court to (1) declare

---

1. Apparently, the 1977 plan was no longer in effect after June 30, 1980. *See* J.A. at 39. According to Pollard, the 1977 plan was replaced in 1980 with another plan, The Systems Plan. Appellant's brief at 6. That plan, however, is not at issue in this appeal.

that he is entitled to payment in the sum of $52,111.50 plus interest under the management incentive plan, or (2) declare that the plan is governed by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 (1982) (ERISA), rendering the forfeiture clause void and unenforceable, and entitling him to payment plus interest and attorneys' fees.

The district court granted summary judgment for Autotote, holding that under the terms of the plan Pollard forfeited his deferred compensation by accepting employment with a competitor of Autotote within twelve months of his termination.[2] *See* J.A. at 100 (Oct. 13, 1987 order). Pollard appeals from that decision.

### III

We must first decide what standard the Delaware courts would apply to determine whether the forfeiture provisions of Autotote's management incentive compensation plans are valid and enforceable.[3] We then decide whether under that standard Autotote was entitled to summary judgment. Our review of a grant of summary judgment is plenary. Summary judgment is appropriate only when there is no genuine issue of material fact and, viewing the facts in a light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *Equal Employment Opp. Comm'n v. City of Mount Lebanon*, 842 F.2d 1480, 1485 (3d Cir.1988).

Pollard contends that the forfeiture provisions in Autotote's plans are unenforceable because Autotote, by terminating him

for reasons other than fault, destroyed the mutuality of obligation underlying the management incentive compensation plan. He relies primarily on *Post v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 48 N.Y.2d 84, 421 N.Y.S.2d 847, 397 N.E.2d 358 (1979). In *Post*, the New York Court of Appeals held that a forfeiture-for-competition clause in a pension plan is unenforceable when the termination of employment is involuntary and without cause. The court noted that New York recognizes limited restraints on employment mobility when a "mutuality of obligation is freely bargained for by the parties," but concluded that the employer had destroyed the mutuality of obligation. 421 N.Y.S.2d at 849, 397 N.E.2d at 360–61.

> An essential aspect of that relationship ... is the employer's continued willingness to employ the party covenanting not to compete. Where the employer terminates the employment relationship without cause, however, his action necessarily destroys the mutuality of obligation on which the covenant rests as well as the employer's ability to impose a forfeiture.

*Id.* The court decided that forfeiture by an employee who was involuntarily terminated without cause is unreasonable as a matter of law.[4]

We have reviewed Delaware law, but find no dispositive case. Delaware courts have not addressed the enforceability of a forfeiture provision against an employee who was involuntarily terminated without fault and who subsequently accepts employment with a competitor. However, De-

---

2. The district court also concluded that the plan was unfunded and provided deferred compensation to a select group of management or highly compensated employees. *See* J.A. at 100.

   An unfunded plan that provides deferred compensation to a select group of management or highly compensated employees is expressly exempt from ERISA's coverage. *See* 29 U.S.C. § 1051(2). Pollard does not challenge on appeal this aspect of the district court's order.

3. Both Pollard and Autotote agree that Delaware law applies. *See* J.A. at 73a–74; appellee's brief at 9. This is a suit in contract, and subject matter jurisdiction is based on diversity of citizenship. Therefore, we must apply Pennsylva-

nia's choice of law rule for contract cases. *Complaint of Bankers Trust Co.*, 752 F.2d 874, 881–82 (3d Cir.1984). Pennsylvania would apply the law of the place with the most significant contacts with, and the most interest in, the dispute. *Id.* at 882–83. Because the contract was signed in Delaware, Pollard was employed in Delaware, and Autotote is incorporated and headquartered in Delaware, Delaware law applies.

4. The court reversed the trial court's grant of summary judgment and remanded for a determination whether plaintiff's termination was voluntary.

laware courts have confronted similar issues in different contexts, and we look to those opinions for guidance in predicting Delaware law. *See McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 663 (3d Cir.), *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980). In the absence of decisions by the Delaware Supreme Court, we may consider decisions by other Delaware courts. *See West v. American Tel. & Tel. Co.*, 311 U.S. 223, 236–37, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940).

Delaware courts have examined the enforceability of a non-competition clause in an employment contract. Because a covenant not to compete and a forfeiture-for-competition clause each restricts an employee's ability to accept alternate employment, we turn for guidance to the Delaware cases evaluating covenants not to compete.

As in any contract dispute, the Delaware courts first apply fundamental contract principles in determining whether a covenant not to compete is enforceable. *See Research and Trading Corp. v. Powell*, 468 A.2d 1301, 1303 (Del.Ch.1983); *Faw, Casson & Co. v. Cranston*, 375 A.2d 463, 466 (Del.Ch.1977) (formal elements required in agreement not to compete are same as required for a contract in general). Therefore, we first consider whether the forfeiture provisions are enforceable under basic contract principles.

In determining enforceability, Delaware courts examine whether both parties to the contract have fulfilled their respective promises. The " 'first level of inquiry may involve any of the typical issues that arise in a contract action[, such as] . . . whether a material breach of the other party to the contract excuses performance. . . .' " *McCann Surveyors, Inc. v. Evans*, No. 1286–S, slip op. at 6–7 (Del.Ch.1987) [available on WESTLAW, 1987 WL 14748]. In *Knowles–Zeswitz Music, Inc. v. Cara*, 260 A.2d 171 (Del.Ch.1969), the court held that because the employer's transfer of the employee was not a breach of the employment agreement, the employee was not relieved of his contractual obligations not to com-

pete. 260 A.2d at 174. *See generally* Restatement (Second) of Contracts § 237 (1981) (uncured material breach by one party discharges other party's duty under contract). Furthermore, in *Capital Bakers v. Leahy*, 20 Del.Ch. 407, 178 A. 648 (1935), the court, in construing an employment contract containing a covenant not to compete, employed a mutuality of obligation analysis. *See id.* at 409–10, 412, 178 A. at 649–50. Therefore, we believe Delaware courts would consider Pollard's mutuality of obligation argument, which is based on these contract principles.

■ Because of the differences in the forfeiture provisions of the 1971 and 1977 plans, we must address each plan separately. With respect to the 1971 plan, we need not reach the mutuality of obligation argument. The forfeiture-for-competition provision applies only "[i]n the event that an employee terminates his employment. . . ." J.A. at 63 (§ 5.1(c)). The plain meaning of that term is that the forfeiture provision applies only when the employee acts to end his employment, not when the employer terminates the employment. The language of that provision is clear and unambiguous. Therefore, its meaning must be determined solely by reference to the words themselves. *See Walsh v. Baily*, 197 A.2d 331, 332–33, 41 Del.Ch. 420, 422–23 (1964) (because meaning of joint account agreements was clear, it was error to admit extrinsic evidence regarding meaning). Because Pollard did not resign, but was involuntarily terminated by Autotote without fault,[5] we hold that the forfeiture provision in the 1971 plan does not apply and that Pollard is entitled to his deferred compensation earned in 1975 and 1976, plus interest.

The forfeiture-for-competition provision in the 1977 plan, however, was expanded to include not only employees who voluntarily terminated their employment, but also employees who were discharged for any reason other than those specified in section 6.4 (involving excessive drug or alcohol use, criminal conviction or behavior, dishonesty,

---

**5.** Autotote does not dispute that Pollard was

involuntarily terminated without fault.

gross negligence or incompetence).[6] Those employees would be paid their deferred compensation unless they accepted employment with a competitor within twelve months of their termination. *See* § 6.5.

By its terms, then, the provision applies to employees involuntarily terminated without fault, and Pollard could not have expected otherwise. The term "is discharged other than for the reasons listed in Article 6.4" includes any reason not stated in Article 6.4. Pollard was terminated because Autotote eliminated the position of General Manager, Field Operations. Because that reason is not enumerated in Article 6.4, the 1977 forfeiture provision applies. Autotote therefore did not destroy the mutuality of obligation as that term is used in *Post*—*i.e.* it did not breach the agreement.

Our inquiry, however, does not end there. Although Delaware courts consider ordinary contract principles when assesing the enforceability of a covenant not to compete in an employment contract, they also apply a reasonableness standard. *McCann Surveyors, Inc. v. Evans*, No. 1268–S, slip op. at 6–7.

> In general, an agreement by an employee not to follow his trade or business for a limited time and in a limited geographical area is not void as against public policy when the purpose of such agreement and its reasonable effect is to protect an employer from sustaining damages which an employee's subsequent competition may cause....

*Faw*, 375 A.2d at 465 (citation omitted).

In determining whether a covenant not to compete in an employment contract is reasonable, the Delaware courts assess three key factors: (1) time limitation; (2) geographic scope; and (3) whether it is designed to protect a legitimate economic interest of the employer. *See id.* at 465; *see also Gas Oil Products, Inc. v. Kabino,*

No. 9150, slip op. at 3 (Del.Ch.1987) [available on WESTLAW, 1987 WL 18432]; *McCann Surveyors,* No. 1268–S, slip op. at 7; *Knowles–Zeswitz,* 260 A.2d at 175.

Because of the similarity between the enforceability of a forfeiture-for-competition provision in a management incentive compensation plan and a covenant not to compete in an employment contract, *see* discussion *supra,* we believe that the Delaware courts would apply the same test of reasonableness in both contexts. *See, e.g., Kroeger v. Stop & Shop Companies, Inc.,* 13 Mass.App. 310, 432 N.E.2d 566 (applying reasonableness analysis to forfeiture-for-competition provision in deferred compensation plan), *review denied,* 386 Mass. 1102, 440 N.E.2d 1175 (1982).

Here, the facts developed thus far are insufficient to determine whether the forfeiture provision of Autotote's 1977 management incentive compensation plan is reasonable under Delaware law. The record does not adequately disclose the geographic scope of Pollard's present duties as Customer Service Director for United Tote. Although it indicates that Pollard is "Customer Service Director for the Eastern Region....", J.A. at 84 (Pollard affidavit), it is unclear what constitutes the "Eastern Region," and how much it overlaps the primary geographic scope of Pollard's former duties as general manager of field operations for Autotote. We recognize that Pollard's position with Autotote was general manager of field operations in the United States, Canada and Mexico, and therefore any subsequent employment in any of those countries would overlap his previous employment. However, given the importance of an individual's freedom of employment, it is essential that restrictions on employment be no broader than is necessary to protect the employer's interests. *See McCann Surveyors,* No. 1268–S, slip

---

6. Specifically, the reasons enumerated in Article 6.4 are: "(a) ... excessive use of intoxicating liquors or of drugs rendering ... [the employee] incapable of satisfactorily carrying out his duties. (b) ... conviction for an indictable offense resulting in his being sentenced to a term of imprisonment. (c) ... dishonesty, gross neg-

ligence or gross incompetence in connection with or affecting the business of the participating corporations in the performance of his duties. (d) ... committing fraud, embezzslement, theft, sabotage or any felony (whether convicted or not)...." J.A. at 23.

op. at 9–10; *Faw,* 375 A.2d at 465. Therefore, a more detailed inquiry into the overlap between Pollard's current and previous employment is necessary to a determination of a reasonable geographic limitation on the forfeiture-for-competition provision.[7]

Similarly, the record is devoid of any factual evidence whether Autotote has a legitimate protectible economic interest to be served by the forfeiture-for-competition provision. For example, there is no evidence whether Pollard had access to sensitive and confidential information while employed at Autotote, and if so, whether that information would be useful to him and his employer and harmful to Autotote. *See Knowles–Zeswitz,* 260 A.2d at 175 (discussing importance of factor whether employer has protectible interest that is implicated in the particular case). Therefore, we will remand to the district court for further factual development and a determination whether in light of those facts the 1977 plan's forfeiture provision is reasonable.

### IV

In conclusion, we will reverse the district court's grant of summary judgment for Autotote insofar as it declares enforceable the forfeiture provision in the 1971 management incentive plan, and direct the district court to enter summary judgment for Pollard with respect to the forfeiture provision of the 1971 plan. Furthermore, we will vacate the district court's grant of summary judgment for Autotote insofar as it declares enforceable the 1977 plan's forfeiture provision and will remand for further proceedings consistent with this opinion.

Costs taxed against appellee.

---

7. We note that the forfeiture provisions in Autotote's plans contain no geographic limitation. However, the Delaware courts have held that the absence of a geographic limitation does not render a non-competition agreement per se unenforceable. The courts will impose a geographic limitation which is reasonable in the circumstances. *See Gas Oil Products,* No. 9150, slip op. at 3–5.