**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

August 31, 2023

Todd C. Schiltz, Esquire
Faegre Drinker Biddle & Reath LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801

Andrea S. Brooks, Esquire
Wilks Law, LLC
4250 Lancaster Pike, Suite 200
Wilmington, DE 19805

RE: ***Centurion Service Group, LLC v. Eric Wilensky,***
Civil Action No. 2023-0422-MTZ

Dear Counsel:

I write to address those aspects of defendant Eric Wilensky's motion to dismiss that I did not resolve at oral argument on July 19, 2023.[1] We have had occasion to speak several times over the past few months, and this letter is cabined to the enforceability of the restrictive covenants plaintiff Centurion Service Group, LLC ("Centurion") asserts Wilensky breached. I therefore rely on the parties' familiarity with the underlying dispute and the Employment Agreement. Wilensky moved to dismiss Centurion's single count for breach of Section 5(a) of the Employment Agreement, asserting that the provision is unenforceable and so Centurion failed to state a claim. For the reasons that follow, his motion is granted.

---

[1] Docket Item ("D.I.") 62. The motion to dismiss and briefing can be found at D.I. 33, D.I. 41, D.I. 42, D.I. 70, and D.I. 71.

I begin with the prefatory issue of choice of law. As I explained from the bench on July 19, the Employment Agreement's Delaware choice of law provision is not necessarily binding.[2] Following the Restatement (Second) of Conflict of Laws, Delaware courts do not enforce choice of law provisions when doing so would circumvent the public policy of another state that has a greater interest in the matter.[3] Where a different state's law would govern in the absence of a choice of law provision, where that state has a fundamental public policy regarding restrictive covenants, and where that state has a materially greater interest in the matter, this Court will defer to that state's law even in the face of a Delaware choice of law provision.[4] Again, as explained from the bench, Illinois is the default state here: Illinois law would govern absent the governing agreements' choice of law provisions.[5] If enforcement of the restrictive covenants would

---

[2] D.I. 73 at 6–8.

[3] *Cabela's LLC v. Wellman*, 2018 WL 5309954, at *7–10 (Del. Ch. Oct. 17, 2018); *Ascension Ins. Hldgs., LLC v. Underwood*, 2015 WL 356002, at *2–3 (Del. Ch. Jan. 27, 2015).

[4] *HighTower Hldg., LLC v. Gibson*, 2023 WL 1856651, at *5 (Del. Ch. Feb. 9, 2023); *FP UC Hldgs., LLC v. Hamilton*, 2020 WL 1492783, at *8 (Del. Ch. Mar. 27, 2020); *Cabela's*, 2018 WL 5309954, at *7–10; *Ascension*, 2015 WL 356002, at *2–5.

[5] D.I. 73 at 7 ("Centurion is an Illinois LLC with a principal place of business in Illinois, Wilensky is an Illinois resident, and the employment agreement was executed in Illinois. The alleged breaches appear to be centered in Illinois as well. Victori Group is headquartered in Illinois. TAB is an Illinois LLC, and Wilensky's auction license is from the State of Illinois.").

conflict with a fundamental policy of Illinois law and if Illinois has a materially greater interest in the issues here than Delaware, Illinois law governs.[6]

Having reviewed the Illinois law the parties submitted in supplemental briefing, it seems Illinois common law and Delaware common law are mostly in step as to the enforceability of restrictive covenants.[7] Illinois law has an additional statutory restriction on the application of restrictive covenants to low wage workers, but this restriction does not apply to Wilensky.[8] While Illinois enacted additional restrictions in 2022, these do not apply to Wilensky's agreement.[9] I see no basis to disturb the Employment Agreement's choice of Delaware law. I thank the parties for their supplemental briefing on Illinois law.

---

[6] *HighTower Hldg.*, 2023 WL 1856651, at *5; *Focus Fin. Partners, LLC v. Holsopple*, 241 A.3d 784, 820 (Del. Ch. 2020) ("The court must consider whether applying the choice-of-law provision would displace the default state's law on a substantive issue where the default state has a materially greater interest than the chosen state.").

[7] Wilensky conceded that the outcome under Illinois and Delaware law is the same. D.I. 33 at Br. 4 n.1.

[8] *See* 820 Ill. Comp. Stat. Ann. 90/5, 10 (2017) (prohibiting employers from entering covenants not to compete with any low-wage employee and defining "low-wage employee" as an employee who earns either the hourly rate required by federal, State or local minimum wage law or $13.00 per hour).

[9] *See* 820 Ill. Comp. Stat. Ann. 90/5 (2022) (defining "covenant not to compete" and "covenant not to solicit" as agreements entered into after January 1, 2022, the effective date of the act).

Delaware courts do not mechanically enforce noncompetition or nonsolicitation agreements.[10] "[A]greements not to compete must be closely scrutinized as restrictive of trade."[11] Delaware courts "carefully review" noncompete and nonsolicit provisions to ensure that they "(1) [are] reasonable in geographic scope and temporal duration, (2) advance a legitimate economic interest of the party seeking its enforcement, and (3) survive a balancing of the equities."[12] "Delaware courts have favored the public interest of competition in their review of noncompetition agreements."[13] Where noncompete or nonsolicit covenants are unreasonable in part, Delaware courts are hesitant to "blue pencil" such agreements to make them reasonable.[14]

Section 5(a) states:

Non-competition. The Executive agrees, in consideration for the obligations of the Company hereunder, including, without limitation, any payments and benefits to be given to the Executive, that during the Restricted Time he will not (other than as a director, officer,

---

[10] *Kodiak Building P'rs, LLC v. Adams*, 2022 WL 5240507, at *4 (Del. Ch. Oct. 6, 2022).

[11] *Faw, Casson & Co. v. Cranston*, 375 A.2d 463, 466 (Del. Ch. 1977).

[12] *FP UC Hldgs.*, 2020 WL 1492783, at *6 (internal quotation marks omitted) (quoting *Lyons Ins. Agency, Inc. v. Wilson*, 2018 WL 4677606, at *5 (Del. Ch. Sept. 28, 2018)).

[13] *Elite Cleaning Co., Inc. v. Capel*, 2006 WL 1565161, at *4 (Del. Ch. June 2, 2005) (citing *Tristate Courier & Carriage, Inc. v. Berryman*, 2004 WL 835886, at *15 (Del. Ch. Apr. 15, 2004)).

[14] *Kodiak Building P'rs*, 2022 WL 5240507, at *4 n.49 (collecting cases and explaining the basis for this Court's hesitancy to blue pencil).

employee, agent or consultant of the Company), directly or indirectly own any interest in, manage, control, participate in (whether as an officer, member, manager, director, employee, consultant, advisor, partner, agent, representative or otherwise), consult with, render services for, or in any other manner engage in any business engaged directly or indirectly in a Competitive Activity in the Restricted Area, including, without limitation, the provision of any other services which the Company was designing, developing, selling or providing, or planning to design, develop, sell or provide, in either case, at any time while the Executive was employed by the Company, nor assist or encourage anyone in doing the same, unless the Executive shall have obtained the prior written consent of the Board, provided, however, that the foregoing restrictions shall not be construed to prohibit ownership by the Executive of not more than five percent (5%) of any class of equity securities of any corporation having a class of equity securities registered pursuant to the Securities Exchange Act of 1934, as amended, which are publicly owned and regularly traded on any national securities exchange or over the-counter market if such ownership represents a personal investment and neither the Executive nor any group of persons including the Executive either directly or indirectly in any way manages or exercises control of any such corporation, guarantees any of its financial obligations or otherwise takes part in its business other than exercising his right as an equity holder or seeks to do any of the foregoing.[15]

Section 1 supplies the following definitions:

(c) "Business" shall mean (i) the buying and selling of medical equipment via auctions and private sales, (ii) providing medical surplus management for healthcare facilities including certified appraisals, trade-in value verification, asset and facility inventories, relocations and closures for such facilities, and (iii) any other business

---

[15] D.I. 1 Ex. 1 § 5(a) [hereinafter "Agr."].

activities in which the Company, at any time during the Term, is engaged or is actively planning to engage in.

(e) "Competitive Activity" shall mean an activity that constitutes being engaged in the Business or engaged in any business that is competitive with the Business in the Restricted Area.

(i) "Restricted Area" shall mean any area within the United States of America, and any other countries within the world where the Company is then actively soliciting and engaging in (or actively planning to solicit and engage in) the Business.

(j) "Restricted Time" shall be the Term and the two (2) year period immediately following the Termination Date.

(l) "Term" shall mean the period beginning on the Effective Date and ending upon the first to occur of the Expiration Date or the Termination Date.[16]

In so many words, Section 5(a) prevents Wilensky from engaging in any business in turn directly or indirectly engaged in i) Centurion's business, ii) any business competitive with Centurion's business, iii) any business Centurion planned to engage in at any time during Wilensky's Term, or (iv) any business competitive with any business Centurion planned to engage in at any time during Wilensky's Term, for two years after the Termination Date, anywhere in the United States and any other countries where Centurion is "actively soliciting and engaging in" its actual or planned business.

---

[16] *Id.* § 1.

Wilensky asserts that Section 5(a) is overbroad in its geography and duration, that it fails to advance a legitimate business interest, and that it is vague. I begin with geography and duration.

> When evaluating the reasonableness of a restrictive covenant, a court must consider how the temporal and geographic restrictions operate together. The two dimensions necessarily interact. To be barred for five years from working in a single county leaves open opportunities for the former employee in surrounding areas. To be barred from an entire state for a shorter period, such as a year or less, leaves open the possibility that the former employee could live off savings, take a long vacation, or enjoy some garden leave. All else equal, a longer restrictive covenant will be more reasonable if geographically tempered, and a restrictive covenant covering a broader area will be more reasonable if temporally tailored. A restrictive covenant that is maximally broad across both dimensions requires exceptional justification. To examine each dimension individually overlooks the interaction and enables employers to justify restrictions that are unreasonably onerous in combination.[17]

Here, before analyzing the geographic and temporal scopes together, I must first resolve the parties' interpretive difference over the geographic scope of the Restricted Area. Wilensky asserts the geographic scope encompasses conduct anywhere in the United States, plus in foreign countries where Centurion is actively soliciting and engaging in its business or planning to do so. Centurion parses the definition of Restricted Area as limited to any area, either in the United

---

[17] *Del. Elevator, Inc. v. Williams*, 2011 WL 1005181, at *8 (Del. Ch. Mar. 16, 2011).

States or abroad, in which Centurion is actively soliciting and engaging in its business or planning to do so. Centurion's reading gives meaning to "any area within" the United States, but Wilensky's does not; Centurion's is the proper reading.[18] Still, even Centurion's reading results in a nationwide ban: as Centurion alleged, "Centurion engages in business nationwide, works with customers selling equipment in over 40 states, and markets to potential customers and buyers throughout the United States."[19]

"Area(s)" where Centurion does business are the core of Section 5(a)'s geographic scope, but not the entirety. "Area" is "amorphous and ill-defined."[20] And the "Restricted Area" mentioned in Section 5(a) encompasses not only areas where Centurion actually engages in or solicits business, but also where Centurion "is then actively planning to solicit and engage in" business.[21] And the term "Business" includes "any other business activities in which the Company, at any time during the Term, is engaged or is actively planning to engage in."[22] So,

---

[18] *Kuhn Constr., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396–97 (Del. 2010) (requiring Delaware courts to "give each provision and term effect, so as not to render any part of the contract mere surplusage").

[19] D.I. 1 at Compl. ¶ 11 [hereinafter "Compl."].

[20] *See Del. Elevator*, 2011 WL 1005181, at *9.

[21] Agr. § 1(i).

[22] Agr. § 1(c).

Section 5(a)'s geographic scope includes not only "areas" where Centurion does business, but also any "area" where Centurion actively planned to solicit and engage in any business activities in which it was engaged or actively planning to engage at any time during Wilensky's Term.

"Whether the duration of a restrictive covenant is reasonable turns on the specific facts before the Court . . . ."[23]  Section 5(a) bans Wilensky for two years from competing nationwide, and in any additional "area" in which Centurion conducts, solicits, or plans to conduct or solicit any actual activity or activity planned at any time during Wilensky's seventeen-year employment.[24]  Under a holistic assessment, this geographic and temporal scope is not reasonable.[25]  The "area" contemplated in Section 5(a) casts a limitless net over Wilensky in both scope of geography and scope of conduct.  Wilensky is prohibited from working

---

[23] *Ainslie v. Cantor Fitzgerald, L.P.*, 2023 WL 106924, at *19 (Del. Ch. Jan. 4, 2023).

[24] D.I. 33 at Br. 1.

not just in "areas" where Centurion conducts its core business of medical equipment sales and surplus management, but also "areas" Centurion might have thought about entering, and where Centurion does or thought about doing any other activity. Wilensky is similarly prohibited from working in not just Centurion's actual field, but also any field Centurion planned to enter. Like in *FP UC Holdings*, "in light of the [Employment] Agreement's failure to define precisely what [Centurion]'s 'business' is, one could argue that [Wilensky] would be in breach of the non-compete if he were employed [in the medical sale and surplus] field anywhere in the country" or abroad.[26] "Given the vast geographic scope of the non-compete, [Centurion] must demonstrate it is protecting a particularly

---

[25] Centurion relies on cases from 2007 and earlier for the proposition that a two-year covenant is reasonable. *See Weichert Co. of Pa. v. Young*, 2007 WL 4372823, at *4 (Del. Ch. Dec. 7, 2007); *Tristate Courier & Carriage, Inc. v. Berryman*, 2004 WL 835886, at *11 (Del. Ch. Apr. 15, 2004); *Copi of Del., Inc. v. Kelly*, 1996 WL 633302, at *5 (Del. Ch. Oct. 25, 1996). These cases predate *Delaware Elevator*'s prescription to consider the time period and geography together, and considered them separately. *Del. Elevator*, 2011 WL 1005181, at *9; *see Weichert Co. of Pa.*, 2007 WL 4372823, at *3; *Tristate Courier & Carriage*, 2004 WL 835886, at *11; *Copi of Del.*, 1996 WL 633302, at *5; *see also All Pro Maids, Inc. v. Layton*, 2004 WL 1878784, at *5 n.23 (Del. Ch. Aug. 9, 2004) (offering dicta on two-year restrictions "covering limited areas" given the one-year period in that case was conceded to be reasonable).

[26] 2020 WL 1492783 at *7.

strong economic interest to persuade the Court that the non-compete is enforceable."[27] "A greater scope must be supported by a greater interest."[28]

Centurion has failed to demonstrate any interest worth protecting with Section 5(a). "[T]his Court has enforced non-competes with a nationwide scope, but only in instances where the competing party agrees, in connection with the sale of a business, to stand down from competing in the relevant industry . . . anywhere . . . for a stated period of time after the sale."[29] This is not such an instance: Wilensky entered into the Employment Agreement in 2018,[30] when he was already employed by Centurion.[31] Centurion's Complaint gives lip service to Wilensky's "finding deals" and "foster[ing] relationships," and to his access to Centurion's confidential information including lists of buyers, sellers, and vendors.[32] These vague and everyday concerns do not demonstrate Section 5(a) is warranted by a particularly strong economic interest. Centurion offers no facts to support that

---

[27] *Id.*

[28] *Ainslie*, 2023 WL 106924, at *16.

[29] *FP UC Hldgs.*, 2020 WL 1492783, at *7.

[30] Compl. ¶ 2.

[31] *See* D.I. 33 at Br. 1 (indicating Wilensky began working for Centurion in 2005 and was terminated in 2022); *see also Kodiak Building P'rs*, 2022 WL 5240507, at *7 ("Delaware law also contemplates denying injunctive enforcement of an overbroad restrictive covenant because of the power dynamic between an employer and employee at the time of signing.").

Section 5(a) is needed to protect any "particularly strong economic interest" from otherwise lawful competition by Wilensky. And the acknowledgements Wilensky assented to in Section 5(g) of the Employment Agreement cannot carry Centurion's burden to demonstrate Section 5(a) is necessary.[32]

I conclude Section 5(a) is unenforceable. I decline to blue pencil it.[34] Wilensky's motion to dismiss is GRANTED.

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

MTZ/ms

cc: All Counsel of Record, via *File & ServeXpress*

---

[32] Compl. ¶¶ 17, 26, 27, 28.

[33] *See Kodiak Building P'rs*, 2022 WL 5240507, at *5–7 (concluding a "mechanical submission to an employee's promise not to challenge a restrictive covenant would fly in the face of the public policy that compels review of that covenant").

[34] *Id*. at *4 n.49.