McCANN SURVEYORS, INC., a corporation of the State of Delaware, Plaintiff,

v.

Carol A. EVANS, Defendant.

Civ. A. No. 1268–S.

Court of Chancery of Delaware, Sussex County.

Submitted: July 22, 1987.
Decided: July 24, 1987.

Edward C. Gill, of Wolhar and Gill, P.A., Georgetown, for plaintiff.

Eric C. Howard, of Morris, Nichols, Arsht & Tunnell, Georgetown, for defendant.

## OPINION

ALLEN, Chancellor.

Pending is an application for a temporary restraining order in this case filed by McCann Surveyors, Inc. against Carol A. Evans, who was formerly employed as a secretary/receptionist and general clerical assistant in McCann's engineering division. The action seeks an injunction specifically enforcing the terms of a covenant not to compete contained in Evans' employment agreement.

The pending motion was brought on with several days notice and defendant appeared at the hearing of it. While it is not the practice of this court to take testimony on preliminary applications of this kind, to do so in this case seemed the efficient way to proceed and, therefore, testimony was taken from an officer of plaintiff and from defendant.

### I.

The office of the writ of temporary restraining order is a very narrow one. Such an order will issue only to prevent

irreparable injury that is occurring or is threatened to occur before the court may hear an application for a preliminary injunction. An application for preliminary injunction, although also heard on less than a full record, is typically presented on a record that has been developed through discovery or, at least, at a time after the parties have had an opportunity to develop such a record. This difference results in a somewhat different emphasis by the court in the determination of these differing preliminary remedies. On an application for a temporary restraining order, the imminence of threatened irreparable injury constitutes the predominating concern. *See Bernstein v. Vestron, Inc.*, Del.Ch., C.A. No. 8404, 1986 WL 3138, Allen, C. (March 11, 1986).

This fact should result in denial of the present motion, for the reason that plaintiff has shown no real likelihood that substantial injury is likely to occur to it during the period necessary for preparation of a preliminary injunction hearing with its more developed record. However, in this instance, since the parties did appear at the hearing and testimony was taken, there has been established a sufficient record to apply the legal test typically applied in applications for preliminary injunction. That test, of course, has several parts. First, plaintiff must establish a reasonable probability of ultimate success in the lawsuit. Second, plaintiff must demonstrate a threat of injury that will occur before a trial of the matter may be had and which would not be adequately compensated with money damages or by equitable relief shaped at a later time. Third, the court must balance the threatened injury to plaintiff against the harm that may befall defendant if defendant is improvidently enjoined preliminarily. Finally, the interest of the public, including individuals with a specific interest in the matter who are not before the court, is to be considered. *Shields v. Shields*, Del.Ch., 498 A.2d 161, 166 (1985).

## II.

I turn first to a sketch of the relevant facts as they appear at this preliminary stage. McCann Surveyors, Inc. is a Delaware corporation doing business throughout the State of Delaware. The company has four operating aspects: a surveying division, an engineering division, a landscape design division and a soils investigation division. It has offices in Georgetown, Milford and Clarksville, Delaware, all in Sussex County.

Defendant Carol A. Evans is a young woman hired by McCann in March, 1986 as a secretary/receptionist to work for the division head of McCann's engineering department. Ms. Evans had previously worked for a surveyor performing general clerical and administrative support functions and had most recently worked in her husband's business, serving as a bookkeeper, secretary, and receptionist. During the course of her employment with McCann, her supervisor, an engineer, challenged Ms. Evans to see if she could pass the state test required for a class A or class B license to design septic systems. Ms. Evans testified that in her previous employment she had assisted her surveyor-employer in the design of simple or standard septic systems and that she therefore knew something about that subject. She accepted the challenge and, in the evenings and during lunch hours, studied for the state administered test for a class A and class B license. She also apparently reviewed case files in her office as part of that learning experience.

Ms. Evans took and passed the relatively simple test for a class A license and was issued such a license effective July 17, 1986. She also took and passed the somewhat more complex test for a class B license which was issued to her effective October 2, 1986.

The class A license is very narrow and Evans has had no occasion to perform any functions which it authorizes. The class B license is somewhat broader; it permits its holder to design only standard septic systems. There are approximately 90 holders of class B licenses in the state of Delaware.

In the spring of this year, for reasons that do not appear in the record, Ms. Evans terminated her employment with McCann

and thereafter opened her own business which she calls "Apple–Designs." In that setting, Ms. Evans holds herself out to the public as available to do percolation tests, standard septic system designs and site evaluations for septic systems. She has testified that in the first three months of her business she earned fees of approximately $1,500.

When defendant accepted employment with plaintiff, she signed a written contract that provided that she would be compensated at an annual salary of $13,000 per year and that contained five single-spaced typed pages of terms and conditions of her employment; included was a covenant not to compete which provided in pertinent part as follows:

> (b) Employee agrees that for a period of three (3) years after the termination of this agreement, he shall not directly, on his own behalf or as an employee, consultant, agent, officer, director, stockholder, or partner of any firm or corporation. [sic] Should the aforementioned three (3) year time limit be found unreasonable by the courts having jurisdiction over such matter, the time limit shall be reduced to a period of no less than one (1) year from the date of termination or otherwise:
>
> (1) Engage in any business activity which is the same as or similar to the business of the company or its affiliates within the geographic limits or 50 miles from any office or branch office on the company.

There is no suggestion in this record that in pursuing her new business Ms. Evans is using any customer list, trade secrets or other proprietary information of plaintiff.

### III.

■ This court is asked regularly to specifically enforce covenants not to compete. Because the specific enforcement of such covenants involve important interests of commercial enterprises and of individuals seeking to support themselves and their families financially, and because, in that setting, the court is asked to exercise its distinctively equitable powers, each such case requires a careful evaluation of the specific facts and circumstances presented. Covenants not to compete when contained in employment agreements are not mechanically enforced. *LewMor, Inc. v. Fleming*, Del.Ch., C.A. No. 8355, 1986 WL 1244, Allen, C. (January 29, 1986), reflects a structure for the evaluation of cases of this kind. It is there stated:

> When evaluating the probability of ultimate success on claims of this kind, one is required to proceed on two levels. The first question the court must answer in determining whether specific enforcement of a contract restricting future employment is to be granted is whether the covenant sued upon is itself valid. This first level of inquiry may involve any of the typical issues that arise in a contract action—whether the promise was in fact made, whether it was supported by consideration or a substitute for consideration, whether a material breach of the other party to the contract excuses performance, etc. In addition to these issues typically encountered in contract actions, covenants restricting future employment, in order to be valid, must be determined as well to be reasonably limited geographically and with respect to the restriction on time; they must as well foster a legitimate economic interest of the plaintiff. *Knowles–Zeswitz Music, Inc. v. Cara*, Del.Ch., 260 A.2d 171 (1969).

Once it has been determined that the restrictive covenant is valid, another range of questions arise from an application requesting specific performance of such a provision. A restrictive covenant may be valid because at the time negotiated it was reasonably crafted to go no further than the legitimate economic interests of the employer warranted and because it was otherwise appropriately limited in time and space, but yet may not be specifically enforceable in the circumstances presented at the time of the application for such enforcement. Where a restriction on the ability to be gainfully employed is involved, the customary sensitivity of a court of equity to

the particular interests affected by its remedies is heightened. *See* 6A *Corbin on Contracts* § 1394 (1962). If it appears that the interests the employer seeks to protect are slight or ephemeral while the consequences of specific enforcement to the employee are grave, equity may well leave the plaintiff to pursue his legal remedies and decline to grant the special remedy of injunction. *See, e.g., Burris Foods, Inc. v. Razzano,* Del.Ch., C.A. No. 1077–Sussex [1984 WL 8230], Walsh, V.C. (July 18, 1984).

*LewMor, Inc. v. Fleming, supra,* at 4–5. As an abstract matter, I cannot say that the time limit here involved—three years—and the geographical scope of the restriction—fifty miles of any office of the plaintiff—are unreasonable. *See Equitable Life Insurance Company v. Young,* Del. Ch., C.A. No. 7993, 1985 WL 11551, Berger, V.C. (May 6, 1985); *Burris Foods, Inc. v. Razzano, supra; Faw, Casson & Co. v. Cranston,* Del.Ch., 375 A.2d 463, 469 (1977); *Tuttle v. Riggs–Warfield–Roloson, Inc.,* 251 Md. 45, 246 A.2d 588 (1968) (two-year restriction on soliciting customers). Therefore, for purposes of this application, I assume that the covenant not to compete is a valid term of defendant's employment contract. I turn then to an evaluation of the specifics of this case to assess whether specific enforcement of that provision is warranted or whether, in the circumstances of this case, on the assumption that the contract provision is valid and enforceable, plaintiff should be relegated to an action at law to prove any damages that it might sustain as a result of the breach of the promise not to compete.

█ In determining whether a contract not to compete will be specifically enforced, a central aspect of the analysis is a balancing of the harms that are threatened to plaintiff and the consequences of specific enforcement to the defendant. For example, where valuable trade secret or other proprietary information has been learned by the defendant and, therefore, his competition with plaintiff's business may be par-

ticularly effective and unfair, the contractual provision not to compete is more likely to be specifically enforced. *E.I. duPont de Nemours & Co. v. American Potash & Chemical Co.,* Del.Ch., 200 A.2d 428 (1964); *C. Edgar Wood, Inc. v. Clark,* Del.Ch., C.A. No. 833–K, 1986 WL 1160, Allen, C. (January 21, 1986). Where, on the other hand, there is little or no real advantage to plaintiff in the specific enforcement of the provision, it typically will not be specifically enforced. *See LewMor, Inc. v. Fleming, supra.* The consequences to defendant of specifically enforcing a contract not to compete are always appropriate to consider. As one leading authority has stated:

> Before enforcing an employee's restrictive promise by injunction, the court will consider its effect upon his life subsequently. Disproportionate hardship to the party against whom enforcement is sought has always been regarded as a reason for refusing equitable remedies ... Before granting an injunction preventing an employee from earning his living in his customary trade or employment, the court should make sure, not only that he contracted to forbear and is guilty of a breach, but also that the former employer is suffering substantial harm, that the employee is soliciting former customers or otherwise depriving his employer of business goodwill that he has paid wages for helping to create, and that the employee will not be deprived of an opportunity to support himself and his family in reasonable comfort.

6A *Corbin on Contracts* § 1394 (1962).[1]

█ Several factors incline me to the view that balancing the rights and interests of the parties here, and of the public generally, points distinctly to the denial of the present application. First, defendant is not engaging in unfair competition with plaintiff in the sense that she is soliciting from known customer lists of plaintiff or using proprietary information of plaintiff. *See Wilmington Trust Co. v. Consistent Asset Management,* Del.Ch., C.A. No. 8867, 1987

---

1. This same balancing, while present, is far less important where the covenant not to compete is part of a contract for the sale of a business, rather than an employment contract. *See Restatement, Contracts* § 515 Comment B.

WL 8459, Allen, C. (March 25, 1987). Second, defendant represents a very small part of the actual and the potential competition that plaintiff must face in the business of designing standard septic systems. More than 90 persons have been licensed in the state of Delaware to do that business and the removal of one individual from the field of competitors cannot be regarded as having a very significant impact upon the business future of plaintiff where no trade secrets or customer lists are involved. Third, the business that defendant is in constitutes a tiny portion of the economic enterprise of plaintiff, but, while small, it constitutes the principal economic activity of defendant.

I therefore conclude that, even assuming the validity of the contractual provision in issue, its specific enforcement is not warranted by the facts and circumstances of this case. In denying the application, I reiterate that which plaintiff no doubt has not heretofore had occasion to realize. That is, that covenants not to compete when contained in employment agreements, will not be mechanically or automatically specifically enforced. Because such provisions deal with the ability of a person to earn a livelihood, in each instance a court will look to all of the facts and circumstances in deciding whether specific enforcement is to be granted or not. For the reasons set out above, I conclude that in this instance those circumstances indicate that specific enforcement should be declined. The pending application will therefore be denied.

IT IS SO ORDERED.