# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

INTERTEK TESTING SERVICES      )
NA, INC.,      )
     )
             Plaintiff,      )
     )
         v.      )    C.A. No. 2022-0853-LWW
     )
JEFF EASTMAN,      )
     )
             Defendant.      )

## MEMORANDUM OPINION

Date Submitted: December 7, 2022
Date Decided: March 16, 2023

Francis G.X. Pileggi & Sean M. Brennecke, LEWIS BRISBOIS BISGAARD & SMITH LLP, Wilmington, Delaware; William S. Helfand & Nickoloz Snovely, LEWIS BRISBOIS BISGAARD & SMITH LLP, Houston, Texas; *Attorneys for Plaintiff*

Jesse L. Noa, POTTER ANDERSON & CORROON, LLP, Wilmington, Delaware; *Attorney for Defendant*

**WILL, Vice Chancellor**

This dispute arises from plaintiff Intertek Testing Services NA, Inc.'s purchase of a business cofounded by defendant Jeff Eastman. In connection with the sale, Eastman agreed not to compete—anywhere in the world—with the business that was sold. He further agreed not to solicit the business's employees and to hold in confidence its confidential information.

Three years after the sale closed, Eastman invested in and joined the board of a startup formed by his son. Intertek believes that these acts violate Eastman's promise not to compete. The non-compete provision, however, is unreasonable and unenforceable. Its geographic scope far exceeds any legitimate economic interests that Intertek might have in protecting the assets and goodwill it acquired. I decline Intertek's invitation to blue pencil the provision.

Intertek's claims regarding purported breaches of the non-solicitation and confidentiality provisions are even weaker. The complaint lacks a single allegation suggesting that Eastman has engaged in conduct violating either covenant.

Accordingly, Eastman's motion to dismiss is granted and this action is dismissed.

# I. FACTUAL BACKGROUND

The following background is drawn from the plaintiff's Verified Complaint for Injunctive Relief (the "Complaint") and the documents it incorporates by reference.[1]

## A. The Sale of Alchemy to Intertek

Before July 27, 2018, Texas-based Alchemy Investment Holdings, Inc. was engaged in "the business of providing workforce training, management, compliance, and consulting services through its proprietary Learning Management System ('LMS') platform and related products."[2] Alchemy "provide[d] services to clients within the food industry" and "also serve[d] businesses within the cannabis industry."[3] Defendant Jeff Eastman, a Texas resident, was Alchemy's cofounder and a major stockholder, and served as its Chief Executive Officer.[4]

---

[1] Verified Compl. Inj. Relief ("Compl.") (Dkt. 1); *see In re Books-A-Million, Inc. S'holders Litig.*, 2016 WL 5874974, at *1 (Del. Ch. Oct. 10, 2016) (explaining that the court may take judicial notice of "facts that are not subject to reasonable dispute" (citing *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 170 (Del. 2006))); *Omnicare, Inc. v. NCS Healthcare, Inc.*, 809 A.2d 1163, 1167 n.3 (Del. Ch. 2002) ("The court may take judicial notice of facts publicly available in filings with the SEC.").

[2] Compl. ¶¶ 4, 17. This allegation is made with respect to "Intertek Alchemy," which is defined as the post-closing successor to Alchemy. *Id.* at Preamble. At times, the plaintiff appears to refer to Alchemy as "Intertek Alchemy."

[3] *Id.* ¶ 4.

[4] *Id.* ¶¶ 2, 5.

On July 27, 2018, plaintiff Intertek Testing Services NA, Inc.—a Delaware corporation with its principal place of business in New York—purchased Alchemy and its subsidiaries pursuant to a Stock Purchase Agreement.[5] Eastman received $10 million in exchange for his ownership interests in Alchemy.[6] The post-closing successor entity to Alchemy now does business as "Intertek Alchemy."[7]

## B.     The Restrictive Covenants

The Stock Purchase Agreement contains several restrictive covenants that circumscribe the sellers' post-sale activities.[8]

Section 7.6(a)(iii) contains a non-compete provision. It purports to prohibit "Restricted Sellers," including Eastman, from competing with Alchemy's business as of closing—anywhere in the world.[9] The provision states that:

> from the Closing until the five-year anniversary of the Closing, each Restricted Seller shall not, and shall cause each of its Affiliates not to, anywhere in the world, own manage, control, undertake, participate in or carry on or be engaged in, or in any other manner advise or knowingly assist any other Person in connection with the operation of, any business or Person competitive to any portion of

---

[5] *Id.* ¶ 7. Exhibits A and B to the Complaint are excerpts of the Stock Purchase Agreement. For simplicity, both exhibits are cited to as the "SPA."

[6] *Id.* ¶ 7.

[7] *Id.* at Preamble.

[8] *Id.* ¶ 8; SPA §§ 7.6(i), 7.6(iii), 7.11.

[9] SPA § 7.6(a)(iii).

the business of [Alchemy] or [Alchemy's subsidiaries] as conducted as of the Closing Date.[10]

Section 7.6(a)(i) contains a non-solicitation provision. It prohibits the Restricted Sellers from "solicit[ing], entic[ing], encourage[ing] or influenc[ing] or attempt[ing] to solicit, entice, encourage or influence" certain of Alchemy's employees and counterparties for five years.[11]

Section 7.11 contains a confidentiality provision. It generally obliges the Restricted Sellers to "hold in confidence any and all confidential, non-public or proprietary information . . . concerning the business of [Alchemy]" for seven years.[12]

## C. Rootwurks's Formation

After the sale of Alchemy, Eastman worked at Intertek Alchemy for five months.[13] He voluntarily resigned on December 31, 2018.[14]

---

[10] *Id.*

[11] *Id.* § 7.6(a)(i).

[12] *Id.* § 7.11.

[13] Compl. ¶ 10.

[14] *Id.* ¶ 11.

4

More than two years later, in February 2021, Chase Eastman (Eastman's son) incorporated a company called Rootwurks, Inc. under Texas law.[15] Chase Eastman was a former Alchemy employee.[16] He presently serves as Rootwurks's CEO.[17]

Rootwurks "serves clients nationwide" by providing "world-class educational/training, safety, and compliance services to the cannabis industry workforce."[18] Rootwurks's clients use Rootwurks's Learning Experience Platform ("LXP"), which is a competitive counterpart to Alchemy's LMS platform.[19] Rootwurks's website advertised LXP as being crafted from the "ground up using the know-how and experience of the founders of Alchemy Systems."[20]

"[A]t some point" after his December 2018 resignation from Intertek Alchemy, Jeff Eastman became a Rootwurks investor and a member of its board of directors.[21]

---

[15] *Id.* ¶ 15. All references to "Eastman" refer to Jeff Eastman. The plaintiff has not brought claims against Chase Eastman.

[16] *Id.*

[17] *Id.*

[18] *Id.* ¶ 17.

[19] *Id.*

[20] *Id.* ¶ 18.

[21] *Id.* ¶ 16.

## D. This Action

On September 22, 2022, Intertek filed the Complaint, along with a motion to expedite and a motion for a preliminary injunction.[22] The Complaint alleges that Eastman breached Sections 7.6(a)(i), 7.6(a)(iii), and 7.11 of the Stock Purchase Agreement because of his affiliation with Rootwurks. On October 10, Eastman filed an opposition to the motion to expedite and a motion to dismiss.[23] I granted, in part, the motion to expedite and set a schedule for briefing on the motion to dismiss.[24] I heard oral argument on December 7.[25]

## II. LEGAL ANALYSIS

Eastman moved to dismiss the Complaint under Court of Chancery Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The standard that governs a Rule 12(b)(6) is well-settled:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and [(iv)] dismissal is inappropriate unless the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[26]

---

[22] Dkts. 1-3.

[23] Dkt. 10.

[24] Dkt. 17.

[25] Dkts. 27-28.

[26] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002) (citations omitted).

6

Although I "must draw all reasonable inferences in favor" of the plaintiff, I am "not required to accept every strained interpretation of the [plaintiff's] allegations."[27]

Eastman argues that the plain terms of the non-compete provision preclude a claim for breach because Alchemy did not conduct business in the cannabis industry as of closing and Rootwurks operates exclusively in that industry.[28] To the extent that Alchemy and Rootwurks operated in separate industries, Eastman asserts that Intertek's attempt to enforce the non-compete amounts to an unlawful restraint on trade.[29] I need not address either argument because Eastman's next contention—that the non-compete provision is facially unenforceable due to its unreasonable geographic scope—carries the day.[30]

With regard to the non-solicitation and confidentiality provisions, Eastman maintains that the Complaint lacks facts indicating that an alleged breach occurred.[31] Because Intertek's opposition brief omits any argument about the non-solicitation

---

[27] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (quoting *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001)).

[28] Def.'s Opening Br. Supp. Mot. Dismiss ("Def.'s Opening Br.") at 6-8 (Dkt. 19). More specifically, Eastman argues that the Complaint contains nothing more than a single conclusory allegation that "Intertek Alchemy" "serve[d] businesses within the cannabis industry." *Id.* at 7 (quoting Compl. ¶ 4).

[29] *Id.* at 8-13.

[30] *See id.* at 13-16.

[31] *Id.* at 16-17.

provision, it is waived. Intertek's attempt to bolster the deficient allegations about the confidentiality provision also fails.

The motion to dismiss is therefore granted in full.

## A.    The Non-Compete Provision

I begin with Eastman's argument that the non-compete provision in Section 7.6(a)(iii) of the Stock Purchase Agreement is unenforceable as a matter of law due to its geographic overbreadth. "Delaware courts do not 'mechanically' enforce non-competes."[32] Instead, "[t]o be enforceable, a covenant not to compete must," among other things, "be reasonable in scope and duration, both geographically and temporally," and "advance a legitimate economic interest of the party enforcing the covenant."[33] "[T]he reasonableness of a covenant's scope is not determined by reference to physical distances" but by "the area in which a covenantee has an interest the covenants are designed to protect."[34]

Although relatively broad restrictive covenants have been enforced in the sale of a business context, such covenants must be tailored to the competitive space

---

[32] *FP UC Hldgs., LLC v. Hamilton*, 2020 WL 1492783, at *6 (Del. Ch. Mar. 27, 2020) (quoting *McCann Surveyors, Inc. v. Evans*, 611 A.2d 1, 3 (Del. Ch. 1987)).

[33] *All Pro Maids, Inc. v. Layton*, 2004 WL 1878784, at *5 (Del. Ch. Aug. 9, 2004), *aff'd*, 880 A.2d 1047 (Del. 2005) (TABLE).

[34] *Weichert Co. of Pa. v. Young*, 2007 WL 4372823, at *3 (Del. Ch. Dec. 7, 2007).

reached by the seller and serve the buyer's legitimate economic interests.[35] Delaware courts have declined to enforce non-compete provisions that are not. In *Kodiak Building Partners, LLC v. Adams*, for example, the challenged provision prohibited the defendant from competing in two states "and within a 100-mile radius of any other location" served by the purchased business or its subsidiaries.[36] The court held that the provision was overbroad because it covered areas not essential to the protection of the buyer's legitimate interests in the acquired company.[37]

The provision here similarly extends to markets untouched by Alchemy's business. The geographic scope of the non-compete is as broad as one can imagine: it restricts Eastman's employment "anywhere in the world."[38] The legitimate

---

[35] *See FP UC*, 2020 WL 1492783, at *7 (observing that, in the sale of business context, a buyer has a legitimate interest in "clear[ing] the seller from the competitive space" where the seller operated while "the buyer strives to make the business he just bought successful"); *see also O'Leary v. Telecom Res. Serv., LLC*, 2011 WL 379300, at *5 (Del. Super. Ct. Jan. 14, 2011) (upholding a nationwide non-compete in connection with the sale of a business that operated nationwide); *Kan-Di-Ki, LLC v. Suer*, 2015 WL 4503210, at *20 (Del. Ch. July 22, 2015) (enforcing a non-compete covering 23 states where the scope was "reasonably calibrated to accomplish" the "mutually agreed upon goal[]" of preventing the seller "from competing or interfering in the [buyer's] business operations after" the sale).

[36] 2022 WL 5240507, at *12 (Del. Ch. Oct. 6, 2022). Intertek attempts to distinguish *Kodiak* on its facts. Pl.'s Answering Br. 15. Intertek asserts that *Kodiak* concerned a low-level employee who suffered from a power imbalance when he signed the covenant. *Id.* Not so. Like the present case, *Kodiak* concerned a senior executive who received significant compensation from the sale of a business. 2022 WL 5240507, at *13 n.103.

[37] *Id.* at *13.

[38] SPA § 7.6(a)(iii).

9

economic interests that Intertek might have to support such a restraint, however, are measured only by "the goodwill and competitive space it purchased from [Alchemy] in the market [Alchemy] serve[d]."[39] Intertek does not allege that Alchemy provided services globally. The Complaint—viewed in the light most favorable to Intertek—states that Texas-based Alchemy served clients "nationwide."[40] The incongruity between the geographic scope of the covenant and that of Alchemy's business leads me to conclude the non-compete is unreasonably broad and unenforceable.[41]

---

[39] *Kodiak*, 2022 WL 5240507, at *12; *see also Rsch. & Trading Corp. v. Pfuhl*, 1992 WL 345465, at *12 (Del. Ch. Nov. 18, 1992) ("While most judicial opinions regarding the reasonableness of the geographic extent of employee non-competition agreements speak in terms of physical distances, the reality is that it is the employer's goodwill in a particular market which is entitled to protection.").

[40] Compl. ¶ 17 (making this allegation as to Intertek Alchemy); *see also* Oral Arg. Tr. (Dkt. 27) 22-23 ("The Court: But do you allege in the complaint that Intertek has a worldwide business? . . . Attorney: Worldwide, no."); Pl.'s Mot. Prelim. Inj. (Dkt. 3) ¶ 25 (stating that Intertek Alchemy's "business . . . covered the full breadth of the North American market").

At oral argument, Intertek argued that the non-compete was geographically appropriate because Alchemy advertised itself "on the internet . . . to the entire world." Oral Arg. Tr. 22. This was not alleged in the Complaint; oral argument cannot rescue pleading deficiencies. *See Standard Gen. L.P. v. Charney*, 2017 WL 6498063, at *25 (Del. Ch. Dec. 19, 2017) ("[I]t is impermissible to attempt to amend one's pleading through a brief."); *Dunn v. FastMed Urgent Care, P.C.*, 2019 WL 4131010, at *7 n.56 (Del. Ch. Aug. 30, 2019) (explaining that a "brief cannot patch pleading deficiencies"). Even if Intertek were able to cure its pleading deficiencies through oral argument, internet advertising alone does not establish that a business serves the global market so as to justify a limitless non-compete provision. If that were so, every company with a website could be considered a global business.

[41] *See EBP Lifestyle Brands Hldgs., Inc. v. Boulbain*, 2017 WL 3328363, at *8 n.43 (Del. Ch. Aug. 4, 2017) (noting that a two-year, global restrictive covenant would be "unreasonable in scope and duration"); *Caras v. Am. Original Corp.*, 1987 WL 15553, at *2 (Del. Ch. July 31, 1987) (concluding that the covenantor was reasonably likely to prevail

10

In an effort to save the covenant, Intertek cites *Research & Trading Corp. v. Pfuhl* to argue that "international restrictions" can be enforced.[42] But the court in *Pfuhl* merely remarked that "[g]iven the broad distribution" of the plaintiff's "customers geographically," it would not be "unreasonable to restrict defendants from dealing with [the plaintiff's] customers wherever located."[43] Other cases have likewise explained that a non-compete provision with an expansive geographic reach is reasonable only if the covenant appropriately covers the market where the covenantee has economic interests.[44] The non-compete at issue here, however, covers a geographic area much larger than that where the plaintiff's economic interests lie.

---

in demonstrating a restrictive covenant was unreasonable given the lack of any geographic restriction in the relevant agreements).

[42] Pl.'s Answering Br. Opp'n Mot. Dismiss ("Pl.'s Answering Br.") at 12 (citing *Pfuhl*, 1992 WL 345465, at *12 (Del. Ch. Nov. 18, 1992)).

[43] *Pfuhl*, 1992 WL 345465, at *12. *Pfuhl* is also distinguishable on the basis that the covenant there contained no express geographic limitation. *Id.* at *2; *see* Oral Arg. Tr. 8 (making the same distinction); *cf. Del. Exp. Shuttle, Inc. v. Older*, 2002 WL 31458243, at *13 (Del. Ch. Oct. 23, 2002) (limiting enforcement of non-compete to where the non-compete contained no geographic limitation); *Gas Oil Prod., Inc. of Del. v. Kabino*, 1987 WL 18432, at *2 (Del. Ch. Oct. 13, 1987) (same).

[44] *Brace Indus. Contracting, Inc. v. Peterson Enters., Inc.*, 2015 WL 5097240, at *3 (Del. Ch. Aug. 28, 2015) (enforcing a restrictive covenant covering the United States and Canada where the defendants did "business worldwide"); *O'Leary*, 2011 WL 379300, at *5 (enforcing a restrictive covenant covering the United States where the plaintiffs' "business operated nationwide before the sale [to the defendant]" and "that nationwide business continued after the sale").

Intertek urges me to "blue pencil" the non-compete provision if I conclude that it is unreasonable in breadth.[45] Although the Court of Chancery has, at times, blue penciled expansive non-competes to supply judicious limitations, it "has also exercised its discretion in equity not to allow an employer [or covenantee] to 'back away from an overly broad covenant by proposing to enforce it to a lesser extent than written.'"[46] In my view, revising the non-compete to save Intertek—a sophisticated party—from its overreach would be inequitable. "[A] court should not save a facially invalid provision by rewriting it and enforcing only what the court deems reasonable."[47]

## B. The Confidentiality and Non-Solicitation Provisions

Eastman next avers that Intertek has failed to plead a viable claim for breaches of the non-solicitation provision in Section 7.6(a)(i) and the confidentiality provision in Section 7.11 of the Stock Purchase Agreement. The Complaint lacks any allegation that Eastman breached—or even threatened to breach—either provision.

---

[45] Pl.'s Answering Br. 13.

[46] *FP UC*, 2020 WL 1492783, at *8 (first citing *Knowles-Zeswitz Music, Inc. v. Cara*, 260 A.2d 171, 175 (Del. Ch. 1969); then quoting *Del. Elevator, Inc. v. Williams*, 2011 WL 1005181, at *10 (Del. Ch. Mar. 16, 2011)); *see also Kodiak*, 2022 WL 5240507, at *4 ("Where noncompete or nonsolicit covenants are unreasonable in part, Delaware courts are hesitant to 'blue pencil' such agreements to make them reasonable.").

[47] *Del. Elevator*, 2011 WL 1005181, at *10; *see also Kodiak*, 2022 WL 5240507, at *4 n.49 (citing authorities that describe the negative incentives created by blue penciling unreasonable non-competes).

Rather, it asserts—without supporting facts—that Eastman "violat[ed] his various duties under Sections 7.6(a)(i) . . . and 7.11."[48]

In its answering brief, Intertek neglected to advance any argument in support of its claim for breach of the non-solicitation provision. "Issues not briefed are deemed waived."[49]

With respect to the confidentiality provision, Intertek's answering brief points to an allegation in the Complaint that Rootwurks's website "advertises its LXP as having been crafted from the 'ground up using the know-how and experience of the founders of Alchemy Systems.'"[50] Intertek argues that the "reasonable and natural inference" to be drawn is that Eastman disclosed proprietary information to Rootwurks.[51] But Intertek cannot rely on unpleaded assertions in its answering brief to cure its deficient Complaint.[52] Even if it could, that allegation is directed towards

---

[48] Compl. ¶ 22; *see Klein v. ECG Topco Hldgs., LLC*, 2022 WL 2659096, at *5 (Del. Ch. July 8, 2022) (dismissing a claim for breach of restrictive covenants where the plaintiff "simply restate[d] the covenants themselves" and did not suggest that the defendant was breaching or attempting to breach them).

[49] *Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999); *see also Larkin v. Shah*, 2016 WL 4485447, at *2 n.5 (Del. Ch. Aug. 25, 2016) (explaining that a plaintiff's failure to raise an argument in opposition to a motion to dismiss constituted waiver).

[50] Pl.'s Answering Br. 17 (quoting Compl. ¶ 18).

[51] *Id.*

[52] *Standard Gen.*, 2017 WL 6498063, at *25 ("[I]t is impermissible to attempt to amend one's pleading through a brief."); *Dunn*, 2019 WL 4131010, at *7 n.56 (explaining that a "brief cannot patch pleading deficiencies").

Eastman's "breach[ of his] contractual obligations under the Non-Compete Agreement."[53] That is, Intertek alleges that Rootwurks's platform competes with Alchemy's—not that Eastman is divulging confidential information. Moreover, Intertek has not demonstrated that the generalized "know-how and experience" referenced in the Complaint are confidential information within the ambit of Section 7.11.[54] Intertek has therefore not pleaded a viable claim.

## III. CONCLUSION

For the foregoing reasons, Intertek has failed to state a claim against Eastman for breaches of Sections 7.6(a)(i), 7.6(a)(iii), and 7.11 of the Stock Purchase Agreement. The defendant's motion to dismiss is therefore granted.

---

[53] Compl. ¶ 18. The Complaint defines "Non-Compete Agreement" as "a companion non-compete and non-solicitation agreement." *Id.* ¶ 8. That definition makes no reference to any confidentiality restriction.

[54] *Id.* ¶ 18; *see In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 65-66 (Del. 1995) ("Conclusory allegations will not be accepted as true without specific supporting factual allegations.").