**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| FORTILINE, INC. and PATRIOT SUPPLY HOLDINGS, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Consolidated C.A. No. 2024-0211-MTZ |
| HAYNE MCCALL, CHRISTOPHER ANTOS, BRUCE ROBERTS, JEFFREY T. JENKINS, SIDNEY C. PETERSON III, CLIFFORD SPAHN, JAMES R. COOK, JR., and TIMOTHY L. VANEGMOND, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER DENYING PRELIMINARY INJUNCTION

WHEREAS:[1]

A.    Defendants Hayne McCall, Christopher Antos, Bruce Roberts, Jeffrey T. Jenkins, Sidney C. Peterson III, Clifford Spahn, James R. Cook Jr., and Timothy L. Vanegmon (together "Defendants") are former employees of plaintiff Fortiline,

---

[1] Citations in the form of "OB" refer to Plaintiffs' [Corrected] Opening Brief In Support Of Their Motions For Preliminary Injunction, available at D.I. 141. Citations in the form of "AB" refer to Defendants McCall, Antos, Roberts, Peterson, Spahn, Cook, and Vanegmond's [Corrected] Answering Brief In Opposition To Plaintiffs' Motion For Preliminary Injunction, available at D.I. 148. Citations in the form of "Ga. AB" refer to Answering Brief Opposing Plaintiffs' Motion For Preliminary Injunction Of Defendant Jeffrey T. Jenkins And Defendant Timothy L. Vanegmond For Georgia Law Issues, available at D.I. 144. Citations in the form of "RB" refer to Plaintiffs' Reply Brief In Further Support Of Their Motions For Preliminary Injunction, available at D.I. 152.

Inc., a waterworks industry company.[2] When Fortiline's parent was acquired in 2016, Defendants as Fortiline employees were granted options in Fortiline's new parent company, plaintiff Patriot Supply Holding, Inc. ("PSH," and together with Fortiline, "Plaintiffs") via Award Agreements.[3]

    B.    The Award Agreements bind Defendants to restrictive covenants and a Delaware forum selection clause. The Award Agreements' restrictive covenants are:

    1.    A confidentiality provision agreeing, indefinitely, not to disclose the confidential information of PSH, its Affiliates, "and their respective predecessors."[4] "Affiliate" is defined as any entity or person that PSH controls, is controlled by, or is under common control with, directly or indirectly, through one

---

[2] OB Ex. 7 at 12 ("Fortiline, Inc., is engaged in the waterworks industry in the following states: Alabama, Arizona, California, Florida, Georgia, Illinois, Indiana, Kansas, Kentucky, Louisiana, Massachusetts, Maryland, Missouri, Mississippi, North Carolina, North Dakota, Nebraska, New Mexico, New York, Ohio, Oklahoma, South Carolina, Tennessee, Texas, Virginia, Washington, D.C., and West Virginia. Fortiline is also licensed to do business in Arkansas and Nevada.").

[3] *E.g.*, OB Ex. 4 [hereinafter "Agr."]. Each Defendant is party to an identical agreement.

    Jenkins also is bound by another agreement with different restrictive covenants. Ga. AB Ex. 2; *id*. Ex. 12. That agreement does not have a Delaware forum selection clause, and it is governed by Georgia law and has narrower restrictive covenants. *Id.* Ex. 2 at 1. Jenkins moved to dismiss on the basis that his Award Agreement covenants with PSH were superceded by his later employment agreement with Fortiline and therefore destroyed the basis for personal jurisdiction. I concluded Plaintiffs had established a prima facie case for personal jurisdiction as, among other things, the mechanics for modifying the Award Agreement had not been followed, and the subsequent employment agreement did not bind or speak for PSH. D.I. 106 at 41–44. Jenkins repeated those arguments in opposing the preliminary injunction. Ga. AB. This order denying Plaintiffs' request for a preliminary injunction does not revisit Jenkins's arguments.

[4] *Id.* § 7.

or more intermediaries, with "control" meaning "the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies . . ., whether through the ownership of voting securities, by agreement or otherwise."[5]

2.     A noncompete lasting one year after termination of employment prohibiting the employee from engaging in the "Business" anywhere in the United States, or assisting or investing in anyone who competes with the Business.[6] "Business" is defined as "the business of [PSH] and its Subsidiaries as currently conducted on the date hereof, as conducted within the five (5) years prior to the date hereof, or which the Board has authorized the Company to develop or pursue (by acquisition or otherwise)."[7]  In so many words, a "Subsidiary" is any entity in which PSH owns directly or indirectly more than fifty percent of the equity or voting power.[8]

3.     A nonsolicitation of customers, suppliers, or other party with whom PSH or any Affiliate does business, and a nonsolicitation of the officers,

---

[5] OB Ex. 5 § 2.2.

[6] Agr. § 8.   This section also contains purported acknowledgements that the restrictions are reasonable.  Those acknowledgements do not bind the Court.  *Kodiak Bldg. P'rs, LLC v. Adams*, 2022 WL 5240507, at *5 (Del. Ch. Oct. 6, 2022).

[7] Agr. § 17(b).

[8] OB Ex. 5 § 2.27.

employees, representatives or agents of the Company and its Affiliates.[9]  This covenant also lasts for one year after termination of employment.[10]

The Award Agreements also contain a provision stating that if any of those covenants are unreasonable, the parties agree to substitute the maximum of what is reasonable.[11]

C.    PSH has many, many, many Affiliates.   Plaintiff's interrogatory response describing them is five pages long.[12]  Affiliates that are also Subsidiaries include Reece Supply, LLC, which operates plumbing, HVAC, and bath & kitchen businesses in all fifty states under various brand names.[13]  Reece Supply also owns two real estate companies, one doing business in Texas, and the other in Oklahoma.[14]

---

[9] Agr. § 9.

[10] *Id.*

[11] *Id*. § 12.

[12] OB Ex. 7.

[13] *Id.* at 9–13 ("MORSCO Supply, LLC currently operates in all 50 states (as well as Washington, D.C., Guam, and Puerto Rico) under the following tradenames: MORSCO HVAC Supply (HVAC), Morrison Supply Company (plumbing and HVAC), L&B Pipe & Supply Co. (plumbing), Irvine Pipe & Supply, Inc. (plumbing), Schumacher & Seiler, Inc. (plumbing, bath & kitchen), and Expressions Home Gallery (bath & kitchen)."). MORSCO Supply, LLC has since been renamed Reece Supply, LLC and now does business under the following brand names: Bush Supply, Desert Pipe & Supply-Nevada, DeVore & Johnson, Express Pipe & Supply Co., Expressions Home Gallery, Farnsworth Wholesale Supply, FWC Supply, Irvine Pipe & Supply, Kiva Kitchen & Bath, L&B Pipe and Supply Co., L&B Pipe and Supply Company, LegendMRO, Morrison Supply Company, Murray Supply Company, Reece, Reece Bath & Kitchen, Reece Bath + Kitchen, Reece HVAC, Reece Plumbing, Schumacher & Seiler, Schumacher and Seiler, Todd Pipe & Supply, Todd Pipe Holdings, Wholesale Specialties, and WS Supply. *Id.* at Ex. B.

[14] *Id.* at 12.

Another PSH subsidiary is Barsco, Inc., a refrigeration and HVAC wholesale distributor in Texas.[15]

D.    PSH has more Affiliates upstream. PSH is owned by Reece Limited, an Australian holding company that holds plumbing, HVAC, waterworks, and bath & kitchen businesses in Australia, the United States, Mexico, and New Zealand.[16] Reece Limited holds Reece International Proprietary Limited, which holds Hamilton Holdco, LLC, which holds additional Affiliates doing business in the U.S. and Mexico, including PSH and companies that conduct information technology development and payroll in Mexico.[17]

E.    Beginning in late 2023, numerous Fortiline employees, including Defendants, left to work at a Fortiline waterworks industry competitor, STAline. On March 4, 2024, Plaintiffs initiated litigation against all Defendants but Vanegmond; they filed a second suit against Vanegmond on April 3.[18] Plaintiffs' request for a temporary restraining order in the first suit was denied because they had waited too long after discovering the flight to STAline to justify imminent injunctive relief.[19] It was denied as against Vanegmond because Plaintiffs made no showing that the

---

[15] *Id.* at 11.

[16] *Id.* at 9.

[17] *Id.* at 9–10.

[18] D.I. 1; *Fortiline, Inc. v. Vanegmond*, 2024-0358-MTZ, D.I. 1.

[19] D.I. 22.

covenants encompassing PSH and PSH's Affiliates are essential to their economic interests.[20]   That order concluded, "The covenants are overbroad as drafted. Adopting Plaintiffs' position to enforce the covenant only for Fortiline would be akin to blue-penciling."[21]  The cases were then consolidated.[22]

F.    The parties marched through discovery.  Plaintiffs identified an expert after the stipulated deadline and so, on Defendants' motion, that expert was precluded.[23]  The parties briefed Plaintiffs' request for a preliminary injunction, and offered oral argument on July 19, followed by supplemental briefing that closed on July 29.

G.    "This Court has broad discretion to grant or deny a preliminary injunction."[24]  To obtain a preliminary injunction, the movant must demonstrate: (i) a reasonable probability of success on the merits; (ii) a threat of irreparable injury if an injunction is not granted; and (iii) that the balance of the equities favors the issuance of an injunction.[25]  A party showing a reasonable probability of success must demonstrate "that it will prove that it is it is more likely than not entitled to

---

[20] *Fortiline, Inc. v. Vanegmond*, 2024-0358-MTZ, D.I. 12.

[21] *Id.*

[22] D.I. 37.

[23] D.I. 143.

[24] *Fletcher Int'l, Ltd. v. ION Geophysical Corp.*, 2010 WL 1223782, at *3 (Del. Ch. Mar. 24, 2010).

[25] *Pell v. Kill*, 135 A.3d 764, 783 (Del. Ch. 2016).

relief."[26] A preliminary injunction "is not granted lightly," and "the moving party bears a considerable burden in establishing each of these necessary elements."[27]

H.     Plaintiffs seek a preliminary injunction enforcing restrictive covenants. "[A]greements not to compete must be closely scrutinized as restrictive of trade."[28] "Because the specific enforcement of such covenants involve important interests of commercial enterprises and of individuals seeking to support themselves and their families financially, and because, in that setting, the court is asked to exercise its distinctively equitable powers, each such case requires a careful evaluation of the specific facts and circumstances presented."[29] Restrictive covenants are enforceable when they are (i) valid under general principles of law, (ii) are reasonable in their scope and effect, (iii) bear a reasonable relationship to the advancement of legitimate interests, and (iv) survive a balancing of the equities.[30]

I.     Here, Plaintiffs recognize they must show a reasonable likelihood of success in proving they have a "legitimate business interest in enforcing the Award

---

[26] *C & J Energy Servs., Inc. v. City of Miami Gen. Empls.*, 107 A.3d 1049, 1067 (Del. 2014) (internal quotation marks omitted) (quoting *Mitchell Lane Publ'rs, Inc., v. Rasemas*, 2014 WL 4925150, at *3 (Del. Ch. 2014)).

[27] *Fletcher Int'l*, 2010 WL 1223782, at *3 (alterations and internal quotation marks omitted) (quoting *La. Mun. Police Empls.' Ret. Sys. v. Crawford*, 918 A.2d 1172, 1185 (Del. Ch. 2007)).

[28] *Faw, Casson & Co. v. Cranston*, 375 A.2d 463, 466 (Del. Ch. 1977).

[29] *McCann Surveyors, Inc. v. Evans*, 611 A.2d 1, 3 (Del. Ch. 1987).

[30] *Sunder Energy, LLC v. Jackson*, 305 A.3d 723, 746 (Del. Ch. 2023).

Agreements' restrictive covenants as to all of PSH's Affiliates rather than Fortiline alone."[31] "A non-competition agreement will only be enforced to protect the legitimate economic interests of the employer. Interests which the law has recognized as legitimate include protection of employer goodwill and protection of employer confidential information from misuse."[32] "[T]he court focuses on whether the non-compete is 'essential for the protection of the employer's economic interests.'"[33]

J.    In considering whether a covenant advances a legitimate interest, this Court has considered whether the plaintiff has demonstrated an interest in protecting not only the plaintiff, but also the plaintiff's affiliates.  Including affiliates in a restrictive covenant greatly expands the covenant's breadth, and therefore requires a broader legitimate economic interest.[34]  A covenant including the employer's affiliates is "not tailored to [the employee's] role while employed," and the inclusion of affiliates in different sectors and different countries is "not essential to the protection of [the employer's] legitimate business functions."[35]  It also presents the

---

[31] OB at 1.

[32] *Research & Trading Corp. v. Pfuhl*, 1992 WL 345465, at *12 (Del. Ch. Nov. 18, 1992).

[33] *FP UC Hldgs, LLC v. Hamilton*, 2020 WL 1492783, at *6 (Del. Ch. Mar. 27, 2020) (quoting *Norton Petroleum Corp. v. Cameron*, 1998 WL 118198, at *3 (Del. Ch. Mar. 5, 1998)).

[34] *Ainslie v. Cantor Fitzgerald, L.P.*, 2023 WL 106924, at *18 (Del. Ch. Jan. 4, 2023), *rev'd on other grounds*, 312 A.3d 674 (Del. 2024).

[35] *Hub Grp., Inc. v. Knoll*, 2024 WL 3453863, at *9 (Del. Ch. July 18, 2024).

probability that a restrained party could unknowingly breach the covenant.[36] Where a plaintiff fails to show any legitimate business interest served by shielding all its unspecified affiliates from the restrained party's competition, and fails to show the restrained party had access to any kind of information that would warrant that restriction, the plaintiff has failed to justify the restrictive covenant as drafted.[37]

K. "Where noncompete or nonsolicit covenants are unreasonable in part, Delaware courts are hesitant to 'blue pencil' such agreements to make them reasonable."[38] The availability of blue-penciling supports a regime of "sprawling restrictive covenants" in a "no-lose situation for employers."[39] "The differences in bargaining power between repeat-player business and individuals suggest that when a restrictive covenant is unreasonable, the court should strike the provision in its entirety."[40] When the policy against unreasonable restraint on trade calls a court to strike a covenant and decline to blue pencil it, the court is unhindered by a provision in that same uneven agreement that purports to promote blue penciling.[41]

---

[36] *Ainslie*, 2023 WL 106924, at *18.

[37] *Id.* at *18–*19; *Hub Grp.*, 2024 WL 353863, at *9–*12; *Kodiak*, 2022 WL 5240507, at *10–*11.

[38] *Kodiak*, 2022 WL 5240507, at *4.

[39] *Sunder Energy*, 305 A.3d at 753–54.

[40] *Id.* at 753 (cleaned up).

[41] *See id.*; *Kodiak*, 2022 WL 5240507, at *6–*7.

**IT IS HEREBY ORDERED** this 5th day of September, 2024, that:

1.      Plaintiffs make three arguments as to why the restrictive covenants are enforceable as to all of PSH's Affiliates. The first two are related: that as consideration for the promises to abide by those restrictive covenants, Defendants received equity in PSH. This argument goes to the Award Agreements' enforceability only insofar as it demonstrates the promises are supported by consideration. This argument does not inform whether the Award Agreements' covenants are reasonable. What an employee received in exchange for a restrictive covenant sheds no light on whether the employer has a legitimate economic interest in the scope of the covenant. Reasonableness depends on what the employer is protecting—not what the employer gave the employee in return.[42]

2.      Plaintiffs' third argument goes to the heart of the matter: that the covenants reasonably protect all of PSH's Affiliates. As an initial matter, the scope of the covenants appears undisputed: Defendants cannot work in the same industry as any PSH Subsidiary, nationwide, and are bound by confidentiality obligations and nonsolicits for all of PSH's Affiliates. By way of example, Plaintiffs acknowledge the covenants prohibit Defendants, who worked for a waterworks company, from

---

[42] *Pfuhl*, 1992 WL 345465, at *12; *FP UC Hldgs*, 2020 WL 14927, at *6; *e.g. Kodiak*, 2022 WL 5240507 at *9–*10 (recognizing an employer's legitimate interest in protecting the goodwill of the company it purchased).

working as a driver or janitor for an HVAC company, anywhere in the United States, even if no PSH Subsidiary is involved in the HVAC business in that area.[43]

3.      Plaintiffs contend PSH's Affiliates run an "integrated business that share common leadership, training, governance, and some commercial products."[44] They point to customer overlap between the plumbing and waterworks business, and leadership training given to leaders in all Reece Limited divisions.  They point out that the other sectors are "all run under one legal entity," while acknowledging that entity is separate from Fortiline.[45]  They point out that PSH's Affiliates share officers and directors.  And they provide a handful of examples in which Fortiline has purchased and sold products from PSH Affiliates.  From there, Plaintiffs conclude it is appropriate to prohibit these Defendants from competing nationwide in any industry in which a PHS Subsidiary does business, or soliciting customers or vendors from not just Fortiline, but all PSH Affiliates.[46]

4.      The fact that PSH's other sectors are under the same corporate umbrella does not, without more, show that PSH has a legitimate business interest in

---

[43] AB Ex. 3 at 200; RB 9.

[44] RB 7.

[45] RB 10.

[46] Plaintiffs also make an argument that the nationwide covenants are enforceable because Fortiline itself operates nationwide.  Applying the covenant just to protect Fortiline would constitue blue-penciling, which is not available here. *Sunder Energy*, 305 A.3d at 753–54; *Kodiak*, 2022 WL 5240507, at *10–*11.

11

protecting those other sectors from Defendants' work.[47]  Plaintiffs have offered nothing else that makes that showing.  Defendants worked only for Fortiline, in the geographic region of the Fortiline branch office where they worked, and only in Fortiline's waterworks industry, not in the industry or area of any other PSH Affiliate.[48] Defendants did not obtain confidential information about any other PSH Affiliate.[49]  Even assuming, as Plaintiffs argue, that Defendants Peterson and Roberts were involved in Fortiline projects that involved PSH plumbing affiliates, that alone does not demonstrate those Defendants could cause those affiliates harm by competing with them; and it falls far short of demonstrating a legitimate interest to protect for all PSH Affiliates.  Plaintiffs have shown no legitimate business interest that would justify restraining Defendants from competing with and soliciting from not just Fortiline, but also any of the other businesses under the PSH umbrella, in completely different business sectors and geographic locations.

/s/ Morgan T. Zurn
Vice Chancellor Morgan T. Zurn

---

[47] *See Hub Grp.*, 2024 WL 353863, at *9; *Ainslie*, 2023 WL 106924, at *18–*19; *Kodiak*, 2022 WL 5240507, at *11–*12.

[48] AB Ex. 10 at 15; *id.* Affidavit of Christopher D. Antos ("Antos Aff.") ¶¶ 2, 6–7, 11, 16; *id.* Affidavit of James R. Cook, Jr. ("Cook Aff.") ¶¶ 4, 6, 8; *id.* Affidavit of Hayne McCall ("McCall Aff.") ¶¶ 26, 30; *id.* Affidavit of Sidney C. Peterson, III ("Peterson Aff.") ¶¶ 6–9, 14, 23; *id.* Affidavit of Bruce L. Roberts, Jr. ("Roberts Aff.") ¶¶ 2–4, 8, 10, 14; *id.* Affidavit of Clifford M. Spahn, Jr. ("Spahn Aff.") ¶¶ 2–4, 11; *id.* Affidavit of Timothy L. Vanegmond ("Vanegmond Aff.") ¶¶ 2–4, 6.

[49] AB McCall Aff. ¶¶ 33–47; *id.* Cook Aff. ¶¶ 9–23; *id.* Antos Aff. ¶¶ 17–32; *id.* Peterson Aff. ¶¶ 23–38; *id.* Roberts Aff. ¶¶ 15–31; *id.* Vanegmond Aff. ¶¶ 12–27; *id.* Jenkins Aff. ¶¶ 33–46; *id.* Spahn Aff. ¶¶ 12–27.