# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| NORTH AMERICAN FIRE ULTIMATE HOLDINGS, LP, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 2024-0023-KSJM |
| ALAN DOORLY, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted: December 10, 2024
Date Decided: March 7, 2025

Sean M. Brennecke, Andrew A. Ralli, LEWIS BRISBOIS BISGAARD & SMITH LLP, Wilmington, Delaware; John F. Hill, LEWIS BRISBOIS BISGAARD & SMITH LLP, Akron, Ohio; *Counsel for Plaintiff North American Fire Ultimate Holdings, LP.*

Joseph B. Cicero, Ryan M. Lindsay, CHIPMAN BROWN CICERO & COLE, LLP, Wilmington, Delaware; Michael C. Rakower, Travis J. Mock, RAKOWER LAW PLLC, New York, New York; *Counsel for Defendant Alan Doorly.*

**McCORMICK, C.**

This case concerns an Incentive Unit Grant Agreement (the "Agreement") between Defendant Alan Doorly and his then-employer, an affiliate of Plaintiff North American Fire Ultimate Holdings LP. Pursuant to the Agreement, Plaintiff issued Defendant 300,000 Class B units ("Units") subject to time and performance vesting. The Agreement contains restrictive covenants, including covenants governing the use of confidential information, solicitation of employees and customers, and competition. North American Fire alleges that Defendant violated the restrictive covenants and, on that basis, terminated Defendant's employment for cause in December 2023. North American Fire filed this suit against Defendant for breach of the restrictive covenants. Defendant moved to dismiss the complaint. By the Agreement's terms, Defendant's for-cause termination resulted in automatic forfeiture of the Units. Defendant argues that the automatic forfeiture eliminated the only consideration for the Agreement—the Units—rendering the Agreement unenforceable. This decision grants Defendant's motion to dismiss.

## I.    FACTUAL BACKGROUND

The facts are drawn from the First Amended Verified Complaint (the "Amended Complaint") and the documents it incorporates by reference.[1]

Defendant installs and services fire alarm systems. Defendant worked for Cross Fire & Security, Inc. ("Cross Fire") for approximately twenty years in the New York metropolitan area. Plaintiff acquired Cross Fire in May 2021 (the "Acquisition"). Plaintiff now owns a portfolio of life services companies that spans

---

[1] C.A. No. 2024-0023-KSJM, Docket ("Dkt.") 21 ("Am. Compl.").

seven states. After the Acquisition, Defendant maintained his role with Cross Fire and was given additional responsibilities with respect to Plaintiff's other portfolio companies.

In February 2022, Plaintiff's predecessor company underwent a restructuring. In connection with the restructuring, Plaintiff issued 300,000 Units to Defendant, subject to time and performance vesting. In exchange, Defendant executed the Agreement.[2] The Agreement contains the restrictive covenants at issue in this litigation. The Agreement did not create a right of employment.[3] There is no allegation that Defendant received a promotion, increased compensation, expanded responsibilities, or enhanced access to company information in exchange for signing the Agreement. The Agreement identifies the Units as "adequate and sufficient consideration" for the restrictive covenants.[4] The Agreement provides that if Defendant breached the restrictive covenants, his vested and unvested Units would be "automatically forfeited."[5] Delaware law governs the Agreement.[6]

---

[2] Am. Compl. Ex. B (Agreement).

[3] *Id.* § 1(e) ("[N]either the issuance of Incentive Units to Executive nor any provision contained in this Agreement shall entitle Executive to remain in the employment of or provide services to the Partnership or its Subsidiaries or affect the right of the Partnership, or its Subsidiaries to terminate Executive's employment or provision of services at any time for any reason.").

[4] *Id.* § 6(a) (asserting that "Incentive Units being granted herein constitutes adequate and sufficient consideration in support of such covenants and agreements").

[5] *Id.* § 3(b).

[6] *Id.* § 11(h).

Defendant resigned from Cross Fire around October 30, 2023. After Defendant resigned, the parties spent weeks negotiating the terms of his separation. Discussions broke down, and Cross Fire terminated Defendant's employment for cause on December 27, 2023. Under the Agreement, the for-cause termination resulted in the automatic forfeiture of Defendant's Units.

As the basis of the for-cause termination, Plaintiff claims that Defendant breached the restrictive covenants in the Agreement before he resigned. Two bids are at the center of Plaintiff's claim.

The first bid occurred in October 2023. Defendant's colleague Chris Neil resigned from Cross Fire on October 4, 2023. Before Neil separated from Cross Fire, on September 26, he sent an email from his Cross Fire email account to an entity that was soliciting bids for a project at New York Penn Station. The same day that Neil sent the email, Defendant formed an entity named Empire Fire Alarm Specialist, Inc. ("Empire"), allegedly to facilitate the bid. Plaintiff alleges that Neil and Defendant knew of the Penn Station project from confidential information obtained through their employment with Cross Fire.

The second bid occurred in December 2023, when Empire submitted a proposal to another Cross Fire client, S&D Electric Company. According to Plaintiff, Empire's bid was "unrealistic[ally]" underpriced and forced Plaintiff to reduce its bid price to secure the project.[7]

---

[7] Am. Compl. ¶ 53.

Plaintiff also alleges that:

- Defendant recruited a Cross Fire sales employee for employment at Empire;[8]

- Defendant purposefully disrupted Cross Fire's business operations;[9]

- The Belnord Hotel in New York, a Cross Fire customer, replaced Cross Fire with Empire for its alarm service contract and would do so at other hotels owned by the Belnord team;[10] and

- City Boutique LLC, another Cross Fire customer, entered a fire alarm monitoring agreement with Empire.[11]

Plaintiff filed this suit against Defendant on January 10, 2024, seeking an injunction to enforce the restrictive covenants, damages for breach of contract, and a declaratory judgment.[12] Plaintiff amended its complaint on March 12, 2024. The Amended Complaint contains four Counts. In Count I, Plaintiff claims that Defendant breached the Agreement's restrictive covenants. In Count II, Plaintiff claims that Defendant breached the covenant of good faith and fair dealing implied in the Agreement. In Count III, Plaintiff seeks a declaration that the restrictive covenants tolled for the period when Defendant was violating them. In Count IV, Plaintiff claims the Defendants tortiously interfered with prospective contractual relations.

---

[8] *Id.* ¶ 55.

[9] *Id.* ¶ 54.

[10] *Id.* ¶ 57.

[11] *Id.* ¶ 58.

[12] Dkt. 1.

4

Defendant moved to dismiss the Amended Complaint on April 5, 2024.[13] The parties briefed the motion, and the court heard oral argument on November 21, 2024.[14] On December 10, 2024, Defendant submitted a supplemental brief addressing a case raised by Plaintiff for the first time during oral argument.[15]

## II.    LEGAL ANALYSIS

Defendant has moved to dismiss Counts I through III (the "Contract Claims") pursuant to Court of Chancery Rule 12(b)(6) and Count IV (the "Tort Claim") pursuant to Court of Chancery Rules 12(b)(2) and 12(b)(6).

### A.    The Contract Claims

As to the Contract Claims, Defendant advances Rule 12(b)(6) arguments. "[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'"[16] When considering such a motion, the court must "accept all well-pleaded factual allegations in the [c]omplaint as true . . ., draw all reasonable inferences in favor of the plaintiff, and deny the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[17] The court, however, need not "accept conclusory allegations unsupported

---

[13] Dkt. 22.

[14] Dkt. 30.

[15] Dkt. 34.

[16] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011).

[17] *Id.* at 536 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[18]

Defendant argues that the restrictive covenants are unenforceable as a matter of law, both on their face and as applied, because they lack consideration and are overbroad.[19]  Because Defendant's first argument that the Agreement lacks consideration is sufficient, the court does not analyze whether the covenants are overbroad.

In advancing his primary argument, Defendant relies foremost on basic principles of contract law.  Contracts require consideration.[20]  A contract that imposes new restrictive covenants on an existing employee requires new consideration.[21]  New consideration may include a beneficial change in an employee's status, like a bonus or promotion.[22]  According to Defendant, the Units were the sole consideration for the restrictive covenants.  When Plaintiff declared that Defendant forfeited the Units,

---

[18] *Price v. E.I. du Pont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011) (citing *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009)).

[19] Dkt. 22 ("Def.'s Opening Br.") at 2, 11–18.

[20] *Shilling v. Shilling*, 2024 WL 4960326, at *5 (Del. Dec. 4, 2024) ("A valid contract requires an offer, acceptance, and consideration, and the parties must have intended that the contract would bind them.").

[21] *Faw, Casson & Co. v. Cranston*, 375 A.2d 463, 466 (Del. Ch. 1977).

[22] *Id.* at 467 (citing *M. S. Jacobs and Associates, Inc. v. Duffley*, 303 A.2d 921 (Pa. 1973)); *see also Hammermill Paper Co. v. Palese*, 1983 WL 19786, at *3 (Del. Ch. June 14, 1983) (holding that a raise was "sufficient consideration to support the agreement"); *Sapp v. Casey Emp. Servs., Inc.*, 1989 WL 133628, at *5 (Del. Ch. Nov. 3, 1989), *aff'd*, 593 A.2d 589 (Del. 1991) (finding insufficient consideration to support a restrictive covenant where plaintiff "received no expectation of continued employment, no promotion, no salary increase, or bonus").

therefore, Plaintiff eliminated the sole consideration for the restrictive covenants. Defendant argues that Plaintiff may not now enforce those covenants.[23]

Defendant's position squares with black-letter law. No consideration means no enforceable contract. It is hard to refute this logic, but Plaintiff tries. Plaintiff's primary response is to deny the factual premise of Defendant's argument—that the Units comprised the sole consideration for the Agreement.[24] As evidence of additional consideration, Plaintiff points to a nondescript, boilerplate recital that references "other good and valuable consideration" received by the parties.[25] Plaintiff's recital-based argument is misguided because "recitals are not a necessary part of a contract" and they do not control where they conflict with other aspects of the agreement.[26] To determine the nature of consideration received, a court must look to the plain terms of the Agreement.[27]

---

[23] *See NBTY v. Vigliante*, 26 N.Y.S.3d 725, 2015 WL 7694865, at *2 (N.Y. Sup. Ct. Nov. 24, 2015) (finding lack of consideration precluded enforcement of restrictive covenants where employees caused stock options to lapse and competed with former employer) (citing *Faw, Casson & Co.*, 375 A.2d at 466).

[24] Dkt. 24 ("Pl.'s Answering Br.") at 6–9.

[25] Agreement at 1.

[26] *Urdan v. WR Cap. P'rs, LLC*, 2019 WL 3891720, at *13 (Del. Ch. Aug. 19, 2019), *aff'd*, 244 A.3d 668 (Del. 2020) ("Generally, recitals are not a necessary part of a contract and can only be used to explain some apparent doubt with respect to the intended meaning of the operative or granting part of the instrument. If the recitals are inconsistent with the operative or granting part, the latter controls.").

[27] *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006) (citing *Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195–96 (Del. 1992)).

The terms of the Agreement do not aid Plaintiff. Section 6 of the Agreement governing "Restrictive Covenants" refers exclusively to the Units as consideration, stating that "the Incentive Units being granted herein constitute[] adequate and sufficient consideration in support of such covenants and agreements."[28] The negative implication of this language is that there was no additional consideration for the restrictive covenants beyond the Units. In search of "other . . . consideration" in the Agreement itself, Plaintiff points to obligations and restrictions imposed on Defendant. Specifically, Plaintiff notes Doorly's obligation to execute a joinder to a limited partnership agreement, agree that the Units did not create additional employment rights, and agree to a time and performance vesting schedule, among other things.[29] But these requirements were not additional consideration paid to Defendant. They were additional obligations that Defendant assumed to receive consideration in the form of the Units.[30]

Plaintiff's factual argument based on "other . . . consideration" therefore fails. It is not reasonable to infer that there was any other consideration beyond the Units.

Plaintiff also takes aim at Defendant's citation to *NBTY, Inc. v. Vigliante*,[31] but this argument too misses the mark. There, a New York state trial court applied

---

[28] Agreement § 6(a).

[29] Pl.'s Answering Br. at 9.

[30] *See generally Cont'l Ins. Co. v. Rutledge & Co., Inc.*, 750 A.2d 1219, 1232 (Del. Ch. 2000) (describing consideration as "a benefit to a promisor or a detriment to a promisee pursuant to the promisor's request").

[31] 26 N.Y.S.3d 725, 2015 WL 7694865 (N.Y. Sup. Ct. Nov. 24, 2015).

8

Delaware law when declining to enforce restrictive covenants in stock-option agreements. The court reasoned that the agreements lacked consideration because the former employees never exercised the options before the agreements expired.[32]

The *NBTY* court separately drew from cases applying the employee-choice doctrine to forfeiture-for-competition provisions, provisions that authorize an employer to withhold benefits otherwise owed to an employee if the employee engages in competitive conduct prohibited under the contract. In this way, such agreements offer employees a choice: refrain from competitive conduct or suffer the economic consequences. Applying the employee-choice doctrine in *NBTY*, the court reasoned that "the individual defendants gave up their right to the stock options" by choosing to compete with NBTY.[33]

Ignoring half of the *NBTY* court's reasoning—that the stock-option agreements lacked consideration—Plaintiff seeks to distinguish the case based on its discussion of employee-choice doctrine.[34] Plaintiff says that the doctrine applies only when an

---

[32] 2015 WL 7694865, at *3 ("the stock-option agreements lack consideration").

[33] *Id.* at *2. The employee-choice doctrine is not directly relevant to the pending motion, but it bears noting that two recent Delaware Supreme Court decisions addressed the issue—*Cantor v. Fitzgerald*, 312 A.3d 674 (Del. 2024), and *LKQ Corporation v. Rutledge*, --- A.3d ---, 2024 WL 5152746 (Del. 2024). Because forfeiture-for-competition provisions could be viewed as a restraint on trade, some courts have treated them like restrictive covenants and reviewed them for reasonableness. The high court rejected that approach in *Cantor*, adopting the employee-choice doctrine and reversing the trial court's determination that the provisions should be reviewed for reasonableness. *Cantor* involved a forfeiture-for-trade provision in a limited partnership agreement. In *LKQ*, the high court clarified that the contractarian principles warranting enforcement of these provisions were not limited to the context of limited partnership agreements.

[34] Pl.'s Answering Br. at 6–11.

employee voluntarily terminates employment and faces a contractually negotiated choice about post-employment benefits. By contrast, here, Defendant was terminated for cause. This distinction is accurate but irrelevant, because Defendant is not attempting to exercise a choice by reclaiming the Units. Rather, he argues that rescission of the Units rendered the Agreement unenforceable. Plaintiff has no meaningful response to this point.

Plaintiff also cites to decisions for the general proposition that Delaware courts enforce restrictive covenants.[35] But those decisions are inapposite. In each, the employee retained the consideration granted in exchange for the restrictive covenants.[36] Doorly did not retain the Units. The Agreement is unenforceable for lack of consideration.

The conclusion that the Agreement is unenforceable resolves Count I for breach of the Agreement. It also resolves Count II for breach of the implied covenant of good faith and fair dealing, which is just another way to enforce the Agreement,

---

[35] Pl.'s Answering Br. at 25–26; Dkt. 33 at 19–20.

[36] *See, e.g.*, *Lyons Insurance v. Wilson*, 2018 WL 4677606 (Del. Ch. Sept. 28, 2018) (enforcing noncompete as consideration for a book of business worth approximately $500,000 in annual revenue); *Kan-Di-Ki, LLC v. Suer*, 2015 WL 4503210, at *1 (Del. Ch. July 22, 2015) (enforcing noncompete as consideration for $4.3 million payment in connection with sale of business); *Weichert Co. of Pennsylvania v. Young*, 2007 WL 4372823, at *1 (Del. Ch. Dec. 7, 2007) (enforcing noncompete as consideration for two bonuses, severance, three weeks' salary, and vacation cash-out); *Tristate Courier & Carriage, Inc. v. Berryman*, 2004 WL 835886, at *1 (Del. Ch. Apr. 15, 2004) (enforcing noncompete as consideration for an equity buyout, which defendant chose over less lucrative options that permitted him to compete); *Delaware Express Shuttle, Inc. v. Older*, 2002 WL 31458243, at *3, *11 (Del. Ch. Oct. 23, 2002) (enforcing noncompete in exchange for paid severance).

and Count III, which seeks declarations concerning the enforceability of the Agreement. Counts I through III are dismissed.

## B.    The Tort Claim

As to the Tort Claim, Defendant first argues that it fails for lack of jurisdiction.[37] He also argues that it fails to state a claim.[38] Once again, Defendant's first argument is successful, obviating the need to resolve the second. The basis for this court's exercise of jurisdiction over Defendant is the Agreement.[39] The Contract Claims fail to state a claim. The Tort Claim, standing alone, presents no basis for personal jurisdiction.

Delaware courts resolve questions of jurisdiction using a two-step analysis.[40] First, the court must "determine that service of process is authorized by statute."[41] Second, the defendant must have certain minimum contacts with Delaware such that the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice."[42]

"When a defendant moves to dismiss a complaint pursuant to Court of Chancery Rule 12(b)(2), the plaintiff bears the burden of showing a basis for the

---

[37] Def.'s Opening Br. at 22.

[38] *Id.* at 24.

[39] Am. Compl. ¶ 6.

[40] *Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007).

[41] *Id.*

[42] *Matthew v. Fläkt Woods Gp. SA*, 56 A.3d 1023, 1027 (Del. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

court's exercise of jurisdiction over the defendant."[43]  "If, as here, no evidentiary hearing has been held, plaintiffs need only make a *prima facie* showing of personal jurisdiction and 'the record is construed in the light most favorable to the plaintiff.'"[44]

"When a party is bound by a forum selection clause, the party is considered to have expressly consented to personal jurisdiction."[45]  "An express consent to jurisdiction, in and of itself, satisfies the requirements of Due Process," eliminating the need to undertake a minimum contacts analysis.[46]

Plaintiff asserts personal jurisdiction over Defendant entirely upon the terms of the Agreement and partnership agreement.  Those agreements, however, provide personal jurisdiction only to the extent of claims "arising out of this Agreement or any transaction contemplated hereby."[47]  This consent to jurisdiction does not extend to the Tort Claims.[48]

---

[43] *Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007) (quoting *Werner v. Miller Tech. Mgmt., L.P.*, 831 A.2d 318 (Del. Ch. 2003)).

[44] *Id.* (first citing *Benerofe v. Cha*, 1996 WL 535405, at *3 (Del. Ch. Sept. 12, 1996) and then quoting *Cornerstone Techs., LLC v. Conrad*, 2003 WL 1787959, at *3 (Del. Ch. Mar. 31, 2003)).

[45] *Solae, LLC v. Hershey Canada, Inc.*, 557 F. Supp. 2d 452, 456 (D. Del. 2008) (citing *Res. Ventures, Inc. v. Res. Mgmt. Int'l, Inc.*, 42 F. Supp. 2d 423, 431 (D. Del. 1999)).

[46] *Id.* (citing *Sternberg v. O'Neil*, 550 A.2d 1105, 1116 (Del. 1988), *abrogated on other grounds by Genuine Parts Co. v. Cepec*, 137 A.3d 123 (Del. 2016)).

[47] Am. Compl. Ex. B ¶ 11(g)(vi); Am. Compl. ¶ 6 n.2 (alleging partnership agreement contains "the same terms" concerning jurisdiction and venue).

[48] *See Ramco Asset Mgmt., LLC v. USA Rare Earth, LLC*, 2023 WL 6939263, at *3 (Del. Ch. Oct. 20, 2023) (dismissing tort claims that arose independently of LLC agreement containing jurisdictional waiver).

Moreover, applying Delaware's long-arm statute, 10 *Del. C.* § 3104, against Defendant to exercise personal jurisdiction over him would offend due process because Defendant's contacts relevant to the tortious interference claim are entirely divorced from Delaware. Defendant resides in New York.[49] He worked for Cross Fire, a New York company doing business in the New York Metropolitan area.[50] His employment agreement notes that Cross Fire's headquarters and office are located in Astoria, New York.[51] The allegedly competitive activity occurred in New York.[52] Plaintiff's damages, if any, arise from Empire's alleged interference with four prospective projects, all of which are located in New York.

Because no independent basis exists for jurisdiction over the Tort Claim, it too is dismissed.[53]

## III. CONCLUSION

Defendant's motion to dismiss is granted.

---

[49] Am. Compl. ¶ 5.

[50] *Id.* ¶ 10.

[51] Cicero Aff., at Ex. A.

[52] Am. Compl. ¶¶ 31–58.

[53] *See Corp. Prop. Assocs. 14 Inc. v. CHR Hldg. Corp.*, 2008 WL 963048, at *10 (Del. Ch. Apr. 10, 2008) (dismissing ancillary tort claims upon dismissal of fiduciary duty claim where tort claims lacked independent jurisdiction); *Pacira BioSciences, Inc. v. Fortis Advisors LLC*, 2021 WL 4949179, at *23 (Del. Ch. Oct. 25, 2021) ("Of course, if the only jurisdictionally sufficient claim is dropped or dismissed, particularly if that occurs early in the litigation, the pendent claim should be dismissed as well.").